Margaret Gail WHEATON, Plaintiff,

v.

OGDEN NEWSPAPERS, INC. d/b/a Messenger Printing, a/k/a Messenger Printing Co., Defendant.

No. C98–3029MWB.

United States District Court, N.D. Iowa, Central Division.

Oct. 8, 1999.

Mark D. Sherinian, Moranville, Jackson & Shernian, West Des Moines, IA, for Plaintiff.

Daniel L. Hartnett, Crary, Huff, Inkster, Hecht & Sheehan, Sioux City, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT OGDEN NEWSPAPERS' MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

TABLE OF CONTENTS

I.  INTRODUCTION ................................................. 1055
    A.  Procedural Background ................................... 1055
    B.  Factual Background ...................................... 1056

II. STANDARDS FOR SUMMARY JUDGMENT ............................. 1057

III. LEGAL ANALYSIS ............................................ 1059
    A.  Disability Discrimination Under The ADA ................ 1059

1. Analytical framework for ADA claims ............................... 1059
2. Wheaton's disability claim .......................................... 1060
   a. Actual disability ............................................ 1060
      i. Substantial limitations in major life activities ................ 1060
      ii. Wheaton's qualifications for actual disability with respect
          to the major life activities of "lifting" and "standing" ..... 1061
      iii. Wheaton's qualifications for actual disability with respect
          to the major life activity of "working". ...................... 1063
   b. Record of impairment ....................................... 1064
   c. Regarded as disabled ........................................ 1065
2. Wheaton's qualification .......................................... 1066
B. Wheaton's State Law Disability Discrimination Claim ................... 1067

IV. CONCLUSION ................................................... 1069

This is an action for disability discrimination in employment, brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Iowa Civil Rights Act, Iowa Code (ICRA) Ch. 216. In its motion for summary judgment, the defendant has posed the following two questions: Whether plaintiff, who suffers from a back condition, is a disabled person within the meaning of the ADA, and the ICRA, and if so, whether that plaintiff is qualified and entitled to protection under these two provisions. The defendant asserts that it is entitled to judgment as a matter of law because plaintiff is not disabled, has no record of a disability, and the defendant did not regard plaintiff as disabled. In contrast, plaintiff asserts that her back condition renders her disabled, she has a record of a disability, and the defendant regarded her as disabled.

## I. INTRODUCTION

On April 20, 1998, Plaintiff Margaret Wheaton filed a complaint against her former employer, Ogden Newspapers, Inc. (Ogden), seeking damages resulting from her termination on July 30, 1997. In her complaint, Wheaton alleges two causes of action: (1) a claim of disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and a similar claim under Iowa Code Chapter 216 *et seq.* Ogden answered Wheaton's complaint on May 15, 1998, denying Wheaton's claims and asserting various defenses.

### A. Procedural Background

On August 13, 1999, Ogden filed a motion for summary judgment on both of Wheaton's claims. In its motion, Ogden claims that Wheaton is not "disabled" within the meaning of either the ADA, or Chapter 216 of the Iowa Code. Ogden asserts that Wheaton did not have a physical impairment that substantially limited one or more of her major life activities. In addition, Ogden contends that its management, namely Bob Howe and Larry Bushman, never perceived Wheaton to be disabled; rather, they simply regarded Wheaton as having back problems. Ogden claims that Wheaton's own alleged statement concerning her inability to do the work was the impetus behind her termination. Accordingly, Ogden claims that since Wheaton's back problems prevented her from performing the essential functions of her job as a bindery worker, the next query is whether Ogden provided Wheaton with reasonable accommodations. Ogden claims that it made genuine attempts to accommodate Wheaton, but Wheaton was unresponsive. Ogden therefore claims that Wheaton was the party responsible for the breakdown of the interactive process by which reasonable accommodation for Wheaton's disability could have been determined.

Wheaton resisted Ogden's motion on September 22, 1999, claiming that there are genuine issues of material facts in dispute regarding both of her claims. Wheaton argues that she has raised material fact questions pertaining to whether

she has a disability, and whether she was terminated because of her disabling condition. Wheaton also contends that her superiors, Howe and Bushman, regarded her as having an impairment that substantially limits her major life activities. Wheaton avers that addressing the reasonable accommodation aspect of her claim is irrelevant because she has not alleged that her employer failed to reasonably accommodate her, but, instead, asserts that she was an individual with a disability who, with reasonable accommodation, could perform the essential functions of her job. On September 28, 1999, Ogden filed a supplemental brief in support of its motion for summary judgment.

On September 29, 1999, the court held oral arguments concerning Ogden's motion for summary judgment. Ogden was represented by Daniel L. Hartnett, Crary, Huff, Inkster, Hecht & Sheehan, Sioux City, Iowa. Wheaton was represented by Mark D. Sherinian, Moranville, Jackson & Sherinian, West Des Moines, Iowa. Before discussing the standards for Ogden's motion for summary judgment, the court will first consider the factual background of these proceedings.

### B. Factual Background

The court will discuss here only the nucleus of undisputed facts pertinent to the present motion for summary judgment. In its legal analysis, the court will address, where necessary, Wheaton's assertion that genuine issues of material fact may preclude summary judgment on her disability discrimination claims.

The summary judgment record reveals that the following facts are undisputed. Ogden Newspapers, Inc. is a West Virginia corporation with its principal place of business in Wheeling, West Virginia. Ogden owns 32 newspapers and approximately 25 other properties. As part of this corporation, Ogden maintains a sheet-fed printing company in Fort Dodge, Iowa, known as "Messenger Printing". Larry Bushman is both the general manager and publisher of Messenger Printing. Bob Howe is the sales manager of Messenger Printing.

Wheaton was an employee of Ogden's "Messenger Printing" Company in Fort Dodge, Iowa, from 1982 until 1997, the year of her termination. In 1979, while performing household chores, specifically, operating the vacuum, she injured her back. She sought treatment from her physician, Dr. Hoyt Allen, and was hospitalized for ten days for an "acute, subacute, and chronic lumbosacral strain." Dr. Allen prescribed Valium and Motrin for her back condition. In 1981, Wheaton was hospitalized a second time for the same type of back pain, which was so severe that it rendered her unable to walk. She was treated with medical relaxants, muscle relaxants, and physical therapy. Upon her discharge, Wheaton continued to experience back pain. In 1982, Wheaton applied for a part-time position at Messenger Printing. However, before accepting this position, Wheaton indicated to Bob Gregerson, the hiring manager, that she had problems with her back. Nonetheless, Mr. Gregerson hired her on an "as needed" basis with no set hours. Mr. Gregerson indicated that her duties involved collating, stapling, and working on the "minibinda," which is a gluing machine, but assured her if any lifting needed to be done, she was to ask one of the other employees to do it. This she did and it worked satisfactorily. Between 1982 and 1993, Wheaton occasionally experienced flare-ups in her back, and was also bothered by standing for long periods of time doing continuous work. In order to ameliorate the pain, Wheaton took breaks. During this phase of her employment, the management of Messenger Printing was amenable to Wheaton's situation.

In 1993, Brad Lennon, the shop foreman at Messenger Printing, approached Wheaton about working in the front office full time. She discussed her capabilities with her superiors, and they determined that her qualifications rendered her suitable for the office position. Larry Bushman, the general manager, was aware of Wheaton's back condition, but believed that she could perform the functions of the job. Wheaton

accepted the offer, and was transferred to the front office as a secretary, performing tasks such as filling out job tickets, taking phone orders, filing and writing reports, and general book work. Wheaton needed help occasionally with emptying file drawers, and recruited the help of a co-workers to complete this task. While doing this, she never encountered criticism from management. While in this secretarial position, Wheaton continued to experience back pain, and in an effort to alleviate the pain, she began to see a chiropractor, Dr. D.L. Musselman, in February of 1995.

In April 1997, Wheaton was diagnosed with breast cancer, which resulted in a complete mastectomy of her left breast. She underwent this surgical procedure on April 14, 1997, and returned to work in the front office, on a part time basis, on May 2, 1997. Later, she returned to full time work with a letter from her physician, Dr. Reece, explaining that she had a five-pound lifting restriction. This was not a permanent restriction, only a temporary one, which was honored by management.

On July 10, 1997, Wheaton met with her superiors, Bob Howe and Larry Bushman, and was informed that she was being transferred from the front office back to the bindery on a full-time basis. The precise reason for her transfer is disputed. Mr. Howe and Mr. Bushman indicated that Wheaton would receive the same salary, perform the same tasks that she had performed previously, and that her lifting and standing restrictions would be respected. Upon beginning her work in the bindery, Wheaton contacted Iowa Job Service to obtain advice concerning the actions taken by her employer. She was told that her employer could not transfer her to a position that it knew she was physically incapable of performing. She continued to work in the bindery and continued to receive treatments from her chiropractor. Shortly thereafter, Wheaton asked Bob Howe for written documentation acknowledging that the company knew of her back limitations. Mr. Howe discussed this issue with Mr. Bushman and decided that the company would not provide her with any

such documentation. Rather, they requested Wheaton to provide them with two notes from her doctors to verify her condition. Wheaton complied and provided "Messenger Printing" with two doctors slips that stated she was limited in her ability to lift more than ten pounds, to stand for extended periods of time, and that her condition was permanent. On July 30, 1997, both Mr. Bushman and Mr. Howe scheduled a meeting with Wheaton, the substance of which is in dispute. Following the meeting, Wheaton was terminated by "Messenger Printing" at the behest of Bob Howe and Larry Bushman.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56 in a number of recent decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–32 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. ... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories,*

*and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in empl oyment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing

*Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow,* 128 F.3d at 1205; *accord Helfter,* 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995). The court will, therefore, keep these standards in mind when considering Ogden's motion for summary judgment.

### III. LEGAL ANALYSIS

Wheaton has brought her disability discrimination claims under both federal and state law. Her federal disability discrimination claim is based on the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Her state-law disability claim is brought pursuant to Iowa Code Chapter 216. The court will consider the federal claim first, then turn to the state-law claim.

### A. Disability Discrimination Under The ADA

Under the ADA, "disability" is broadly defined to include not only "a physical or mental impairment that substantially limits one or more of the major life activities of [the disabled] individual," but also "ha[ving] a record of such an impairment," or the state of "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A), (B), (C); *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2201, 141 L.Ed.2d 540 (1998); *Fjellestad v. Pizza Hut of America,* 188 F.3d 944, 946 (8th Cir.1999); *Webb v. Garelick Manufacturing Co.,* 94 F.3d 484, 487 (8th Cir.1996) (considering only § 12102(2)(A) in the case before it); *Aucutt v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311, 1318 (8th Cir.1996); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995); *Gerdes v. Swift–Eckrich, Inc.,* 949 F.Supp. 1386, 1396 (N.D.Iowa 1996).

The Eighth Circuit Court of Appeals has observed that "[t]he purpose of the ADA is broad and remedial: It is designed to provide 'a clear and comprehensive national mandate for the elimination of discrimina-tion against individuals with disabilities.' " *Webb,* 94 F.3d at 487 (quoting 42 U.S.C. § 12101(b)(1)); *accord Kornblau v. Dade County,* 86 F.3d 193, 194 (11th Cir.1996). This court has previously engaged in extensive discussions of the origins of the ADA, and therefore, it will not do so again here. *See Muller v. Hotsy Corp.,* 917 F.Supp. 1389, 1402–05 (N.D.Iowa 1996); *Heather K. v. City of Mallard, Iowa,* 887 F.Supp. 1249, 1263–66 (N.D.Iowa 1995); *Hutchinson v. United Parcel Serv., Inc.,* 883 F.Supp. 379, 387–90 (N.D.Iowa 1995); *Fink v. Kitzman,* 881 F.Supp. 1347, 1368–71 (N.D.Iowa 1995); *Valentine v. American Home Shield Corp.,* 939 F.Supp. 1376, 1388–91 (N.D.Iowa 1996). Instead, the court will first briefly set forth the analytical framework for determining claims under the ADA, and then address the nature of the prohibition on disability discrimination found in the ADA.

### 1. Analytical framework for ADA claims

■ To qualify for relief under the ADA, a plaintiff must establish (1) that he or she is a disabled person within the meaning of the ADA; (2) that he or she is qualified, that is, with or without reasonable accommodation (which the plaintiff must describe), he or she is able to perform the essential functions of the job; and (3) that the employer terminated the plaintiff, or subjected the employee to adverse decision, "because of" the plaintiff's disability. See *Fjellestad,* 188 F.3d 944, 946; *Webber v. Strippit, Inc.,* 186 F.3d 907, 909 (8th Cir.1999); *Smith v. City of Des Moines,* 99 F.3d 1466, 1473 (8th Cir.1996); *Price v. S–B Power Tool,* 75 F.3d 362, 364 (8th Cir.1996); *Benson v. Northwest Airlines,* 62 F.3d 1108, 1112 (8th Cir.1995); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995); *Mason v. Frank,* 32 F.3d 315, 318–19 (8th Cir.1994). In this case, the two issues are whether Wheaton is "disabled" within the meaning of the ADA, and if disabled, was Wheaton an individual who, with or without reasonable

accommodation, could perform the essential functions of her employment position.

Wheaton claims that she is disabled, because her back condition "substantially limits" major life activities. She also claims that she has a record of impairment, because of her back problems. Finally, Wheaton claims that she is regarded as disabled by defendant Ogden. The court will first address Wheaton's claim under § 12102(2)(A) that she is disabled because her back condition "substantially limits" major life activities.

### 2. Wheaton's disability claim

#### a. Actual disability

##### i. Substantial limitations in major life activities

Wheaton claims that she is actually disabled under the ADA. Consequently, the court must determine whether Wheaton has a present physical or mental impairment that substantially limits one or more of her major life activities. 42 § 12102(2)(A); see Sutton v. United Air Lines, Inc., —— U.S. ——, ——, 119 S.Ct. 2139, 2146, 144 L.Ed.2d 450 (1999) (requiring that a person be presently—not potentially or hypothetically—substantially limited in order to demonstrate a disability). In seeking further definition of the term "substantially limits" under the ADA, the Eighth Circuit Court of Appeals looked to the regulations implementing the ADA:

> [T]he EEOC regulations state that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment, (ii) its duration or expected duration, and (iii) its actual or expected long-term impact. 29 C.F.R. § 1630.2(j)(2).

Aucutt, 85 F.3d at 1319; accord Cook v. State of R.I. Dep't of Mental Health, Retardation, & Hosps., 10 F.3d 17, 25 n. 10 (1st Cir.1993) (finding that EEOC regulations "indicate that the question of whether an impairment is substantially limiting turns on '(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the [actual or expected] permanent or long-term impact ... of, or resulting from, the impairment,'" quoting 29 C.F.R. § 1630, App. at 403 (1992)). ADA regulations, as well as ADA interpretive guidance, make clear that temporary, minor injuries do not "substantially limit" a person's major life activities. 29 C.F.R. § 1630.2(j), 29 C.F.R. pt. 1630, App. § 1630.2(j). Also, the Supreme Court has recently held that the determination of whether an individual is substantially limited in a major life activity must take into account mitigating measures such as medicines and assistive devices. Sutton, —— U.S. at ——, 119 S.Ct. at 2147.

This court has applied this "substantially limits" a "major life activity" requirement in a number of cases under the ADA. See, e.g., Sicard v. City of Sioux City, 950 F.Supp. 1420, 1428 (N.D.Iowa 1996) (considering whether the plaintiff's uncorrected myopia substantially limited any major life activities such that the plaintiff was disabled within the meaning of the ADA); Muller, 917 F.Supp. at 1411–12 (considering whether a person with spinal injury that was temporary nonetheless perceived by his employer as having a disability that substantially limited his major life activity of working); Hutchinson, 883 F.Supp. at 395–96 (considering whether a person with shoulder and back injuries was substantially limited in any major life activity); Fink, 881 F.Supp. at 1376–77 (considering whether a person with carpal tunnel syndrome was substantially limited in a major life activity).

Since the ADA does not define "major life activities," the Eighth Circuit Court of Appeals has been guided by the definition provided in 29 C.F.R. § 1630.2 of the EEOC regulations on implementation of Title I of the ADA. Aucutt, 85 F.3d at 1319. As the court observed in Aucutt:

> As defined in 29 C.F.R. § 1630.2(I), the phrase "major life activities" means "functions such as caring for oneself,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

*Aucutt,* 85 F.3d at 1319; *Webber,* 186 F.3d 907, 910. Under the EEOC's interpretations of the ADA,

> "Major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. This list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching.

29 C.F.R. pt. 1630, App. § 1630.2(I); *see also Bragdon,* 118 S.Ct. at 2204 (emphasizing that the regulations provide an illustration, rather than exhaustive, list of major activities) The Eighth Circuit has also considered major life activities to include, sitting, standing, lifting, and reaching. *Fjellestad,* 188 F.3d 944, 946 (citing *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 616 (8th Cir.1997)).

This court has found certain alleged disabilities did not meet the requirements of substantially limiting the plaintiff in a major life activity. *See, e.g., Hutchinson,* 883 F.Supp. at 395–96 (back and shoulder injuries were not minor, but were temporary, and any remaining impairment was admittedly only slight, thus plaintiff was not disqualified from a wide range of jobs, and had failed to demonstrate substantial limitations in any other major life activity); *Fink,* 881 F.Supp. at 1376–77 (plaintiff with carpal tunnel syndrome was restricted only in lifting, but was not substantially limited in any other way, and the lifting restriction did not substantially limit any major life activity or even impair plaintiff's job performance); *Schwarz v. Northwest Iowa Community College,* 881 F.Supp. 1323, 1343–45 (N.D.Iowa 1995) (applying Iowa disability discrimination law, the court held that alleged "night blindness," although it impaired the major life activity of seeing, did not limit the plaintiff in any

significant way from obtaining satisfactory employment or disqualify her from a wide range of jobs); *and compare Sicard,* 950 F.Supp. at 1439 (the plaintiff generated genuine issues of material fact precluding summary judgment as to disability within the meaning of the ADA based on his uncorrected myopia); *Muller,* 917 F.Supp. at 1412 (in a perceived disability case, the plaintiff generated a genuine issue of material fact precluding summary judgment as to whether his employer perceived him to be substantially limited in the major life activity of working because of his back injuries). Here, the parties dispute whether Wheaton's back condition constitutes a disability within the meaning of the ADA. The court must now contemplate whether Wheaton has generated a genuine issue of material fact as to whether her back condition substantially limits any of her major life activities, or whether defendant Ogden is entitled to summary judgment on the ground that Wheaton is not "disabled" within the meaning of the ADA.

*ii. Wheaton's qualifications for actual disability with respect to the major life activities of "lifting" and "standing".*

■ The undisputed record before the court reveals that Wheaton suffered a back injury while performing household chores. Her back condition was so severe in April of 1979 that she was hospitalized for 10 days, because of an "acute, sub-acute, and chronic lumbosacral strain." Thereafter, in 1981, Wheaton was hospitalized for a second time because her back pain was likewise so severe that it rendered her unable to walk. Her treating physician prescribed both Valium and Motrin to alleviate the pain. Nonetheless, Wheaton continues to suffer pain in her lower back, which is permanent. Wheaton experienced recurrent back pains, and occasional flare-ups requiring days of bed rest between 1979–1997. She is unable to lift objects weighing more than 10 pounds. She is also unable to stand for extended

periods of time without experiencing severe discomfort in her lower back.

On the record before it, the court concludes that Wheaton has generated a genuine issue of material fact as to whether her back condition substantially limits the "major life activities" of "lifting," and "standing." 29 C.F.R. § 1630.2(I); 29 C.F.R. pt. 1630, App. § 1630.2(I). The Equal Employment Opportunity Commission's Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. pt. 1630, App. § 1630.2(j), provides:

> [A]n impairment is substantially limiting if it significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity. Thus, for example, an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking.

29 C.F.R. pt. 1630, app., 1630.2(j). As indicated above, it is undisputed that Wheaton's back condition limits her ability to lift objects weighing more than 10 pounds, and standing for extended periods of time. Wheaton submitted an affidavit in which she states that on one occasion her back pain was so severe that she could barely stand up, and a fellow employee needed to drive her home from work. A letter from Wheaton's treating physician, Dr. Allen, dated July 29, 1997, states that Wheaton suffers from arthritis in her back, and that her condition is permanent. Dr. Allen also imposed a 10 pound lifting restriction due to Wheaton's condition.

The Eighth Circuit Court of Appeals recently concluded that "a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA." Snow, 128 F.3d at 1207. However, this is not a per se rule regarding all lifting restrictions; rather, it is a per se regarding 25 pound lifting restrictions. In Snow, the physician imposed a 25 pound lifting restriction. The court held that this lifting restriction, without additional evidence, did not demonstrate that the plaintiff was substantially limited in the major life activity of lifting, and therefore, the lifting restriction was insufficient to constitute a disability within the meaning of the ADA. In reaching its conclusion, the Eighth Circuit Court of Appeals relied on Aucutt, which similarly held that a 25 pound lifting restriction, without additional evidence, did not constitute a disability within the meaning of the ADA. Snow, 128 F.3d at 1207. Thus, the Eighth Circuit Court of Appeals has clearly indicated that a 25 pound lifting restriction will not, by itself, be sufficient to constitute a disability within the meaning of the ADA. The Ninth and Fourth Circuit Court of Appeals have also held that, as a matter of law, a lifting restriction of 25 pounds or more does not render a person disabled. See Thompson v. Holy Family Hosp., 121 F.3d 537, 539–40 (9th Cir.1997); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir.1996).

The Eighth Circuit Court of Appeals has also held that an individual who cannot lift more than 10 pounds frequently and twenty pounds occasionally is not disabled within the meaning of the ADA. Helfter, 115 F.3d at 617. However, that case is inapposite, because Wheaton's physician imposed an unconditional 10 pound lifting restriction. Accordingly, the Eighth Circuit Court of Appeals has never been presented with the question of whether an individual with an unconditional 10 pound lifting restriction is disabled within the meaning of the ADA.

The court is satisfied that Wheaton has presented "more" evidence than merely her lifting restriction to generate a genuine issue of material fact as to whether she is substantially limited in "lifting" and "standing." See Snow, 128 F.3d at 1207 (stating that a physician imposed lifting restriction, "without more," is insufficient to constitute a disability). In addition to her 10 pound lifting restriction, Wheaton points out that her arthritic back condition is permanent, she has been plagued by this

condition for more than fifteen years, and her lifting capabilities as compared to an average person in the general population are substantially limited. Wheaton also submitted Dr. Allen's affidavit in which he opines that "90% of the general population of similar sex and age would have better ability to stand and lift than [Wheaton]." Allen Affid. at 1; *See* 29 C.F.R. § 1630(j)(2) (determining whether an individual is substantially limited in a major life activity entails (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact). In this same affidavit, Dr. Allen states that Wheaton suffers from a "severe degenerative disc disease," and that her "symptoms became severe enough by July, 1997 that it was interfering with her duties at work, particularly concerning repetitive[ly] lifting objects and having to stand on cement for long periods of time." In light of all the evidence, the court concludes that Wheaton has generated a genuine issue of material fact that she is significantly restricted, as compared to an average person in the general population, as to the duration, manner and condition under which she can conduct the "major life activities" of "standing" and "lifting." Therefore, a material fact question exists as to whether Wheaton is actually disabled under this provision of the ADA, and this portion of Ogden's motion for summary judgment is denied. While it is unnecessary to discuss Wheaton's claim that she is substantially limited in her major life activity of working, the court, nevertheless, will address this claim.[1]

### iii. Wheaton's qualifications for actual disability with respect to the major life activity of "working".

A person is substantially limited in the major life activity of working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Webb,* 94 F.3d at 487 (citing 29 C.F.R. § 1630.2(j)(3)(i)). An ADA plaintiff is not required to demonstrate that her impairment restricts her ability to perform all jobs. Rather, an individual is disabled when her impairment prevents performance of a certain class of jobs. *Id.* The Eighth Circuit Court of Appeals has routinely applied this definition of substantial limitation and has held that an ADA plaintiff is not disabled when that plaintiff fails to establish the requisite restriction from performing a class of jobs. *See Aucutt,* 85 F.3d at 1319 (difficulty performing obstacle course at a single work place not sufficient to show security guard was substantially limited in working as a security guard generally); *Wooten,* 58 F.3d at 386 (holding that the plaintiff's impairment was not a substantial limitation, because it only prevented him from performing narrow range of meat-packing jobs).

Wheaton asserts that her back condition and the resulting physical limitations, prevent her from performing a class of jobs or a broad range of jobs as compared to the average person. Wheaton supports this claim by the conclusions articulated by Kathlyn Bennet the defendant's vocational expert. In her deposition testimony, Kathlyn Bennet, stated that Wheaton is physically incapable of performing any jobs within the medium, heavy, and very heavy labor classifications. In sum, Bennet stated that Wheaton is foreclosed from performing a broad range of jobs. Therefore, in light of Wheaton's testimony, coupled with the vocational expert's testimony, a reasonable fact-finder could infer that Wheaton is "limited in a significant

---

1. The Code of Federal Regulations provides that:

   If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working.

   29 C.F.R. pt. 1630, App. § 1630.2(j).

way from obtaining other satisfactory employment," or disqualified from a wide range of available jobs. Wheaton has presented the court with sufficient evidence to generate a genuine issue of material fact as to whether she is substantially limited in her major life activity of working, and, thus, this portion of Ogden's motion for summary judgment is denied.

### b. Record of impairment

The court will next address Wheaton's alternative claim under 42 U.S.C. § 12102(2)(B), that the defendant discriminated against her for "ha[ving] a record of such an impairment." Specifically, Wheaton asserts she has a record of impairment because of her back condition. Defendant Ogden contends that there is no record evidence that Wheaton had a record of an impairment that substantially limited one or more major life activities.

Having a record of disability means that one "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *see Land v. Baptist Medical Center,* 164 F.3d 423, 425 (8th Cir.1999); *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 192 (5th Cir.1996); *Roth v. Lutheran General Hosp.,* 57 F.3d 1446, 1456 (7th Cir.1995); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727–28 (5th Cir. 1995); *Ricks v. Xerox Corp.,* 877 F.Supp. 1468, 1476 (D.Kan.1995). This provision is intended to address discrimination that occurs because of an individual's history of a disability or because of an individual's misclassification as disabled. *See Roth,* 57 F.3d at 1456. As the Equal Employment Opportunity Commission's Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. pt. 1630, App. 1630.2(k), states in pertinent part:

> The second part of the definition provides that an individual with a record of an impairment that substantially limits a major life activity is an individual with a disability. The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability. For example, this provision protects former cancer patients from discrimination based on their prior medical history. This provision also ensures that individuals are not discriminated against because they have been misclassified as disabled. For example, individuals misclassified as learning disabled are protected from discrimination on the basis of that erroneous classification. Senate Report at 23; House Labor Report at 52–53; House Judiciary Report at 29.

> This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records.

29 C.F.R. pt. 1630, app., 1630.2(k).

■ Wheaton has pointed to record evidence supporting that she has generated a genuine issue of material fact that she had a history of an impairment that substantially limited one or more of her life activities. Wheaton has presented facts that in 1979 she injured her lower back, and was treated by Dr. Hoyt Allen. She was diagnosed with "an acute, subacute, and chronic lumbosacral strain" for which she was hospitalized for ten days. She was hospitalized again for the same pain, and since her discharge in 1981 she has visited Dr. Allen with additional complaints regarding her back. Furthermore, when Wheaton began to work at "Messenger Printing" in 1982, the defendant was fully cognizant of Wheaton's lower back pain, made repeated allowances for Wheaton to take breaks from standing, and from lifting objects when she worked in both the bindery and front office. These accommodations were afforded to Wheaton during her fifteen year tenure with "Messenger Printing."

Also, prior to her discharge, Wheaton presented both Bob Howe and Larry Bushman, per their request, with a letter from her physician documenting that Wheaton's back condition was severe and permanent.

On the record before it, the court concludes that Wheaton has generated a genuine issue of material fact as to whether her back condition constitutes a history of an impairment that substantially limits one or more major life activities. Therefore, a material fact question exists as to whether Wheaton is disabled under this provision of the ADA, and this portion of Ogden's motion for summary judgment is denied.

### c. Regarded as disabled

As discussed above, Wheaton argues that she is actually disabled. Wheaton also argues, in the alternative, that she was effectively "disabled," because the defendant regarded her as having a disability. The ADA also provides protection to those individuals who are "regarded as having a disability." 42 U.S.C. § 12102(2)(C).

The applicable EEOC regulations provide that being "regarded as having such an impairment" means:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in paragraphs (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2($l$)(1)-(3). It therefore follows that being "regarded as having a disability" can be demonstrated in any one of three ways: (1) the individual may have some impairment that does not substantially limit him or her in a major life activity, but is perceived by an employer as having a substantially limiting impair-

ment; (2) the individual may have an impairment which, only because of adverse attitudes about the impairment, appears substantially limiting; or (3) the individual may be free from impairments, but regarded by the employer as having a substantially limiting impairment. 29 C.F.R. pt. 1630, App. § 1630.2($l$).

Moreover, many courts have observed that the emphasis of these ADA provisions and regulations is on the impairment's effect upon employers' attitudes. *See Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 912 (11th Cir.1996); *Wooten*, 58 F.3d at 385. "These provisions and regulations are intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities." *Gordon*, 100 F.3d at 912; *accord Wooten*, 58 F.3d at 385 (citing *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). Consistent with the purpose of this section of the ADA, in *Gordon* the Eleventh Circuit noted with approval Judge Posner's observation that:

> "[A]lthough at first glance peculiar, [this provision] actually makes a better fit with the elaborate preamble to the Act, in which people who have physical or mental impairments are compared to victims of racial and other invidious discrimination. Many such impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired, are analogous to capable workers discriminated against because of their skin color or some other vocationally irrelevant characteristic."

*Gordon*, 100 F.3d at 913 (quoting *Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 541 (7th Cir.1995)).

The Eighth Circuit Court of Appeals has concluded that "[a] person is 'regarded as having' an impairment that substantially limits major life activities when others treat that person as having a substantially limiting impairment." *Webb v. Mercy*

*Hospital,* 102 F.3d 958 (8th Cir.1996); *Wooten,* 58 F.3d at 385. In *Wooten,* the court concluded that "a person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment." *Wooten,* 58 F.3d at 385 (citing 29 C.F.R. § 1630.2(*l*)(3)). The court further found that the focus in determining whether a person is regarded as having a disability is on "the impairment's effect upon the attitudes of others" *Id.* (citing *Byrne v. Board of Educ., Sch. of West Allis,* 979 F.2d 560, 564 (7th Cir.1992)). Thus, Wheaton would be disabled within the meaning of the ADA if the defendant regarded Wheaton as having a disabling impairment. Therefore, to prevail on her perceived disability claim, Wheaton must show that there is a genuine issue of material fact that Ogden perceived her back condition and work restrictions as "substantially limit[ing] one or more of [her] major life activities." *See* 42 U.S.C. § 12102(2)(C); *Aucutt,* 85 F.3d at 1319–20; *Wooten,* 58 F.3d at 385.

Wheaton emphasizes that her superiors knew that she had back problems. In light of this knowledge, Wheaton contends that the defendant viewed her activities as being substantially limited. To buttress her argument, Wheaton points out that during her fifteen years at Messenger Printing, management always permitted her to request help when objects needed to be lifted, and to take breaks after standing for long periods of time. She points out that Mr. Bushman expressed concern that she might re-injure herself were she to lift certain objects, or remain standing for long periods of time. Additionally, Mr. Bushman instructed Linda Cartee, Wheaton's direct supervisor in the bindery, as to the various jobs that Wheaton should or should not have been doing. From these actions and statements, Wheaton asserts that she was "regarded as having a disability" by the defendant, in violation of the ADA.

The court concludes that viewing these facts in the light most favorable to Whea-

ton as the nonmovant, a reasonable fact finder could infer that the defendant regarded Wheaton as disabled. Therefore, because the court finds there are at least material questions of facts as to whether the defendant regarded Wheaton as being substantially limited in her ability to work, the court concludes that this portion of Ogden's motion for summary judgment is denied.

### 2. *Wheaton's qualification*

Having concluded that Wheaton has raised material fact questions as to whether she has a disability under the ADA, the court proceeds to examine whether Wheaton is "a qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *See* 42 U.S.C. § 12111(8); *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944 (8th Cir.1999); *Benson v. Northwest Airlines,* 62 F.3d 1108, 1111–12 (8th Cir.1995).

■ In her deposition testimony, Wheaton stated that she mentioned her back condition to Bob Howe and Larry Bushman when they originally transferred her from the front office back to the bindery in 1993. However, after the transfer and the commencement of her work, she testified that she never indicated that she was incapable of performing the essential functions of her job. Specifically, when counsel asked Wheaton, "[i]s it your testimony here today that you were capable of doing that job that you were performing on July 30," she responded "yes." She testified that although she experienced pain, she performed her work. Additionally, her supervisors never prepared a report or review documenting her inability to perform her assigned job duties. When asked about Wheaton's job performance in the bindery, subsequent to her transferral, Larry Bushman testified that she was able to perform all the functions of her job, except lifting heavy boxes onto a skid, which her co-workers were able to do for

her without placing an unreasonable burden on the company, or the co-workers. Mr. Bushman further testified that Wheaton was able to proof read, collate paper, place product in the mini-binder, stack finished product in a box, take material off a folder, and check printing quality on products as they ran off the press. Thus, Wheaton asserts that she was able to perform virtually every function of her job description.

In contrast, Larry Bushman testified that he recalled a time when Wheaton told him that she could not perform her job duties, because of her bad back. However, Bushman stated that he could not swear that she had made that statement, thereby rendering his testimony about Wheaton's job performance equivocal. Bob Howe also testified equivocally that Wheaton relayed to him that she could not perform the essential functions of her job, and when pressed by Wheaton's attorney he capitulated and said, "I don't recall if that's what she specifically said, but that's what the crux of the conversation was." In light of the conflicting testimony, coupled with the absence of any reports documenting Wheaton's poor job performance or her inability to perform the essential functions of her job in the bindery department, the court concludes that there are genuine issue of material fact as to whether Wheaton is a "qualified individual with a disability," who could, perform the essential functions of her job.

The Eighth Circuit Court of Appeals has formulated a two prong test of whether a person is "qualified" within the meaning of the ADA:

> (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation.

42 U.S.C. § 12111(8); *see also Benson*, 62 F.3d at 1111–12.

For some fifteen years, Wheaton worked for Messenger Printing with her back condition. The company was fully aware of her situation, allowing her to take breaks after standing for long periods of time, and to seek help from co-workers when required to lift objects weighing over 10 pounds. These accommodations were afforded to Wheaton throughout the course of her employment at Messenger Printing. Wheaton maintains that at no point after her transfer did she make requests from Messenger Printing for additional accommodations. Moreover, there is no record evidence indicating that Wheaton made requests to management for additional accommodations after her transfer back to the bindery in 1993. Therefore, the court finds it unnecessary to address whether Wheaton was responsible for the breakdown of the interactive process by which reasonable accommodations are afforded to employees, because Wheaton has generated genuine issues of material fact demonstrating that she performed the essential functions of her job.

### B. Wheaton's State Law Disability Discrimination Claim

■ Having addressed Wheaton's disability discrimination claim under the ADA, the court will now address Wheaton's disability discrimination claim under Iowa law. Iowa Code § 216.6 makes it an unfair or discriminatory employment practice to "discharge" or "otherwise discriminate" against any employee "because of" a disability "unless based upon the nature of the occupation." Iowa Code § 216.6; *Sierra v. Employment Appeal Bd.*, 508 N.W.2d 719, 722 (Iowa 1993). The elements of a case of disability discrimination under Iowa law are that the plaintiff must prove that he or she (1) has a disability; (2) was qualified for the position; and (3) was discharged (or suffered adverse employment decisions) because of his or her disability.[2] *Boelman v. Manson State Bank*, 522 N.W.2d 73, 79 (Iowa 1994).

---

**2.** Iowa courts look to the ADA, its regulatory interpretations, and its caselaw in construing

■ The threshold inquiry is whether the plaintiff can show that he or she is a disabled person subject to protection under Iowa Code § 216.6. *Vincent v. Four M Paper Corp.*, 589 N.W.2d 55, 60 (Iowa 1999); *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 234 (Iowa 1995); *Miller v. Sioux Gateway Fire Dep't*, 497 N.W.2d 838, 841 (Iowa 1993); *Henkel Corp. v. Iowa Civil Rights Comm'n.*, 471 N.W.2d 806, 809 (Iowa 1991); *Monson v. Iowa Civil Rights Comm'n*, 467 N.W.2d 230, 232–33 (Iowa 1991). Under Iowa law, a handicapped or disabled person is defined as "any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such impairment, or is regarded as having such impairment." *Miller*, 497 N.W.2d at 841; *Henkel*, 471 N.W.2d at 810; *Probasco v. Iowa Civil Rights Comm'n*, 420 N.W.2d 432, 434 (Iowa 1988). The plaintiff's disability must limit one or more of the plaintiff's "major life activities," which have been defined in 161 Iowa Admin. Code § 8.26(3) as including "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Henkel*, 471 N.W.2d at 810; *Monson*, 467 N.W.2d at 233; 161 Iowa Admin. Code § 8.26(3). Additionally, the impairment must "disqualif[y] [the employee] from a wide range of other available jobs." *Hollinrake v. Iowa Law Enforcement Academy*, 452 N.W.2d 598, 604 (Iowa 1990).

Ogden contends that Wheaton is unable to show, or generate a genuine issue of material fact as to whether, her back condition constitutes a disability under Iowa law. The Iowa Supreme Court in *Hollinrake*, reiterated the standards for the degree of impairment necessary to constitute a protected disability which it had previously set forth in *Probasco:*

> The degree to which an impairment substantially limits an individual's employment potential must be determined with reference to a number of factors: the number and type of jobs from which the impaired individual is disqualified, the geographical area in which the individual has reasonable access, and the individual's job training, experience and expectations. An impairment that interferes with an individual's ability to do a particular job but does not significantly decrease the individual's ability to obtain satisfactory employment otherwise is not substantially limiting within our statute.

*Hollinrake*, 452 N.W.2d at 604 (quoting *Probasco*, 420 N.W.2d at 436; other citations omitted). Although the plaintiff in *Hollinrake* was limited in the particular job of being a peace officer, because of deficiencies in his visual acuity, the court held that he was "not limited in any significant way from obtaining other satisfactory employment," and thus was not "truly disabled" such that he could engage the protection of the Iowa Civil Rights Act. *Id.*

■ In this case, Wheaton contends that the defendant believed that her employment activities were substantially limited because of her back condition. She buttresses her contention by emphasizing that she was terminated two days after she provided her superiors with Dr. Allen's July 28, 1997, letter explaining that she has an arthritic back, and that it is a permanent condition. Also, she points out that the defendant hired a vocational expert, Kathlyn Bennet, who concluded that Wheaton is physically incapable of performing any jobs within the medium, heavy, and very heavy labor classifications. In light of this information, a reasonable fact-finder could infer that the defendant perceived Wheaton as "limited in a significant way from obtaining other satisfactory employment," or disqualified from a wide range of available jobs. Therefore, the court finds that Wheaton has raised a material question of fact as to whether she is

---

a disability claim under the Iowa Civil Rights Code (ICRA). *See Fuller v. Iowa Dept. of Human Servs.*, 576 N.W.2d 324, 329 (Iowa 1998). Thus, the foregoing analysis under the ADA, also applies to Wheaton's ICRA claim.

"disabled" within the meaning of the Iowa Civil Rights Act. Accordingly, the court denies the Ogden's motion for summary judgment on Wheaton's claim of disability under Iowa Code Chapter 216.

## IV. CONCLUSION

Based on its review of the summary judgment record as a whole, the court concludes that Wheaton has generated material fact questions regarding her ADA claim. Specifically, the court finds that there are genuine issues of material fact as to (1) whether her back condition substantially limits any of her major life activities; (2) whether Wheaton has a record of an impairment that caused a significant restriction in any of her major life activities; (3) whether the defendant regarded Wheaton as having an impairment that substantially limited her ability to work; and (4) whether Wheaton is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that she held. Thus, the court denies defendant Ogden's motion for summary judgment on Wheaton's ADA claims under 42 § 12102(2)(A)-(C).

The court finds that Wheaton has generated genuine issues of material fact regarding her disability claim under the Iowa Civil Rights Act. The record reveals a genuine issue of material fact as to whether Wheaton had a protected disability under the Iowa Civil Rights Act. Therefore, the court **denies** defendant Ogden's motion for summary judgment on Wheaton's claim under Iowa Code Chapter 216.

**IT IS SO ORDERED.**