# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2653

_____

Rita Y. Greer,              *
                                *
      Appellant,          *
                                *    Appeal from the United States
v.                         *    District Court for the Eastern
                                *    District of Arkansas.
Emerson Electric Company, a Foreign   *
Corporation,             *
                                *
      Appellee.           *

_____

Submitted: March 10, 1999
Filed: August 6, 1999

_____

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and HANSEN, Circuit
Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

Rita Y. Greer appeals the district court's[1] grant of summary judgment in favor of Emerson Electric Company (Emerson) in her employment discrimination suit. Greer alleges that Emerson terminated her on account of her disability or perceived

_____

[1]The Honorable Elsijane Trimble Roy, United States District Judge for the Eastern District of Arkansas.

disability, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § § 12101-12213 (1994) and the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. § § 16-123-101 to 16-123-108 (Michie Supp. 1997).[2] Finding no material dispute of fact, the district court held that Greer failed to establish her prima facie case of disability discrimination and that, even if Greer could set forth her prima facie case, Greer alternatively failed to prove that Emerson's stated reason for her termination was a pretext for disability discrimination. For the reasons set forth below, we affirm.

## I.    BACKGROUND

Greer worked as an assembler at Emerson's factory in Paragould, Arkansas from 1968 until her discharge on September 15, 1995 for excessive absenteeism. Greer does not dispute the extent of her absences and acknowledges that Emerson followed an attendance policy and practice.[3]

Greer received her first disciplinary write-up for attendance on March 15, 1993. Greer had missed ten full days and left early on another day of the prior fifty-one work days. Bill Jarrett, her supervisor, reminded Greer of Emerson's attendance policy and requested that she improve her attendance to conform to Emerson's expectations. On August 17, 1994, Greer received her second written warning for

---

[2]Greer also raised a claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § § 2601-2654 (1994), as well as Arkansas state law claims for outrage, breach of contract, and wrongful discharge. However, Greer only appealed the district court's ruling regarding "her claims under the ADA and the Arkansas Civil Rights Act." Appellant's Br. at 18.

[3]Emerson's attendance policy and practice included a system of progressive discipline. Three "absence occurrences" within a ninety day period would trigger discipline under the policy. Emerson defined an "absence occurrence" as a single absence or a consecutive period of absences of one to five days.

attendance. Within the ninety day period preceding August 17th, Greer had at least three absence occurrences.[4] Jarrett again reviewed the attendance policy with Greer. On February 14, 1995, Greer received her third disciplinary action for absenteeism. During the ninety day period prior to February 14th, Greer had three absence occurrences.[5] After explaining Emerson's attendance policy, Jarrett warned Greer that, if she could not maintain her attendance within Emerson's guidelines, she would face further disciplinary action.

From April 20, 1995 to September 13, 1995, Greer was on an extended medical leave of absence to recover from a fractured rib. On September 13, 1995, Dr. Larry Felts, Greer's treating psychiatrist, and Mr. Kendell Camp, Greer's psychotherapist, medically certified that Greer could return to work. That same day, Emerson suspended Greer for three days for unacceptable attendance. Emerson counted none of Greer's absences during her extended medical leave as grounds for her suspension but, instead, relied upon the period from February 15, 1995 through April 19, 1995. During this period of time, Greer again had accumulated three absence occurrences.[6]

On September 15, 1995, Greer met with Emerson's Plant Manager, Derwood Biles, and Industrial Relations Manager, Ed Tolleson, to discuss her suspension. During this meeting, Biles reviewed Greer's previous attendance records and the disciplinary action forms with Greer. Greer acknowledged that these records and

---

[4]The three absence occurrences consisted of: (1) July 25 for testing and a doctor's appointment; (2) August 5 for a "bad headache;" and (3) August 15 and 16 for doctors' appointments.

[5]These three absence occurrences consisted of: (1) January 24 because Greer was "sick to her stomach;" (2) February 8; and (3) February 10 for an injured thumb.

[6]These three absence occurrences consisted of: (1)March 8 for a doctor's appointment; (2) March 29-31 because of Greer's diarrhea; and (3) April 17-19 due to the flu.

forms were correct and that "she had been lucky she had not been terminated." Appellee's Supplemental App. at 502. Based upon Greer's excessive absenteeism, Biles and Tolleson decided to discharge Greer.

On October 22, 1996, Greer filed an application for disability insurance benefits with the Social Security Administration. In her Application for Benefits, Greer certified that she "became unable to work because of [her] disabling condition on September 15, 1995" and that she is still disabled. Id. at 557. In her Disability Report, Greer certified that she suffers from the disabling conditions of "back/depression," "carpal tunnel syndrome," and "depression/anxiety-fatigue/memory loss." Id. at 561.

On February 20, 1996, Greer filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging a single basis of discrimination: her belief that she was discharged on September 15, 1995 because of her disability or because Emerson regarded her as having a disability. The EEOC issued its determination that Greer was not a qualified individual with a disability because of her inability to maintain regular and reliable attendance and that, therefore, Greer failed to establish a violation of the ADA.

On November 13, 1996, Greer filed a complaint in the district court, alleging that her discharge violated the ADA and the ACRA .[7] Greer contended that Jarrett's daily harassment[8] of her aggravated her mental condition of severe depression which led to her excessive absenteeism and eventual nervous breakdown at the time of her

---

[7]See supra n.2 detailing Greer's other claims raised to the district court but not appealed.

[8]From 1990, when Jarrett became Greer's supervisor, through the time of Greer's discharge in 1995, Jarrett admitted to directing certain vulgarities (namely, "Fuck you") toward Greer. J.A. at 298.

discharge. Greer contends that this harassment also should be considered as a hostile work environment claim under Title VII.

On March 20, 1998, the district court granted Emerson's Motion for Summary Judgment on the ADA and ACRA disability discrimination claims. The district court concluded that Greer failed to establish her prima facie case for disability discrimination because: (1) there was no evidence to establish that Greer was substantially limited in any major life activity; (2) Greer was not a qualified individual with a disability because of her inability to maintain regular and reliable attendance; and (3) there was no evidence that Greer's discharge was on account of her disability, actual or perceived. Finally, the district court decided that, even assuming Greer could establish her prima facie case, Emerson had articulated a legitimate, non-discriminatory reason (excessive absences) for discharging Greer, and Greer failed to present any evidence showing that Emerson's stated reason of excessive absenteeism was a pretext for disability discrimination. Greer appeals.

## II.    DISCUSSION

We review the grant of summary judgment de novo, viewing the facts in the light most favorable to Greer, the non-moving party. See Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205 (8th Cir. 1997). Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Snow, 128 F.3d at 1205.

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Similarly, the ACRA creates a civil cause of action against employers who discriminate against an otherwise qualified person on account of the presence

of any sensory, mental, or physical disability.  See Ark. Code Ann. § 16-123-107(a)-(c).

For disability discrimination claims brought under either statute, we apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  See Land v. Baptist Med. Ctr., 164 F.3d 423, 425-26 (8th Cir. 1999) (definition of disability in both ACRA and ADA is the same in all relevant respects, and the Eighth Circuit believes that the Arkansas Supreme Court would consider analogous federal ADA decisions in deciding the issues in case); Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 445 (8th Cir. 1998) (McDonnell Douglas burden-shifting scheme applies to cases brought under the ADA).  Under McDonnell Douglas, Greer first must establish a prima facie case of discrimination by demonstrating "that she is disabled within the meaning of the [ADA]; [that] she is qualified to perform the essential functions of her job with or without reasonable accommodation; and [that] she suffered an adverse employment action because of her disability."  Webb v. Mercy Hosp., 102 F.3d 958, 959-60 (8th Cir. 1996).

Greer challenges the district court's determination that she failed to establish a prima facie case with respect to her ADA and ACRA claims for disability discrimination.  Specifically, Greer first argues that the district court erred in concluding that Greer's depression and anxiety were not qualifying disabilities because they did not substantially limit a major life activity.  We reject this argument.

A plaintiff may prove disability by showing that she (1) has a disability as defined under the ADA; (2) suffers from a history of such a disability; or (3) is perceived by her employer as having such a disability.  See 42 U.S.C. § 12102(2)(A)-(C).  Disability is defined as "a physical or mental impairment that substantially . . . limits one or more of the plaintiff's major life activities."  Snow, 128 F.3d at 1206.

In the instant case, Greer has presented no evidence from which to reasonably infer that any of her major life activities is substantially limited. Greer claims that "but for the conduct of Jarrett toward her, her prior disability, severe depression, would not have been aggravated," which contributed to her excessive absences, ultimate discharge, and present condition of total disability. Appellant's Br. at 17. Despite Greer's claim that her excessive absenteeism stemmed from her alleged disability as aggravated by Jarrett's harassment, the record reveals that many of these absences resulted from different, non-serious ailments, ranging from the flu to diarrhea to an injured thumb.

However, even assuming that Greer's condition made her unable to work with Jarrett, this does not mean that Greer was substantially limited in the major life activity of working. See Snow, 128 F.3d at 1206-07 ("The inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working.") (quotation and citation omitted). Moreover, as of the date of Greer's termination on September 15th, Dr. Felts and Mr. Camp medically released Greer to return to work without any medical restrictions. The fact that Greer may have become substantially limited at some point following her September 1995 discharge is irrelevant to the analysis, and the district court did not err in not discussing the deposition testimony of Mr. Camp.[9] Therefore, we agree with the district court that there is no genuine issue of material fact and that Greer is not disabled within the meaning of the ADA or the ACRA.

Second, Greer contests the district court's finding that she was not a qualified individual with a disability. Greer states that "but for [her] absences, [she] was

_____

[9]During his deposition on June 12, 1997, Mr. Camp testified that Greer's functional capacity progressively worsened over the last eighteen months. See J.A. at 312, 321. This testimony describes Greer's condition subsequent to her discharge on September 15, 1995.

qualified for the menial factory work she had performed for Emerson for 27 years." Appellant's Br. at 25. Emerson responds that Greer was not qualified because of her excessive absences. Even if we were to assume that Greer could establish a disability within the meaning of the ADA, we agree with Emerson's argument that Greer was not qualified because of her excessive absences.

We have recognized that "regular and reliable attendance is a necessary element of most jobs." Nesser, 160 F.3d at 445; see also Halperin v. Abacus Tech. Corp., 128 F.3d 191, 198 (4th Cir. 1997) (An employee who is "unable to come to work on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones.") Here, regular and reliable attendance was a necessary element of Greer's job at Emerson. Emerson maintained a policy and progressive discipline practice regarding absenteeism. A review of Greer's attendance records for 1993 through 1995 indicate that, exclusive of vacation time, Greer missed 67 days of work in 1993, 65 days of work in 1994, and 110 days of work through September 15, 1995. Greer does not dispute the accuracy of the attendance records or disciplinary forms that Biles and Tolleson relied upon in discharging her. Moreover, Greer admitted in her Statement of Undisputed Facts submitted to the district court that she "was terminated for no other reason other than absenteeism." J.A. at 146. As previously noted, we reject Greer's claim that her excessive absenteeism stemmed from her alleged disability as aggravated by Jarrett's harassment because the record reveals that many of these absences resulted from various, non-serious ailments, unrelated to her depression. Therefore, we find that Greer also failed to establish that she was a qualified individual with a disability.

Finally, Greer argues that a causal connection exists between her mental disability and her discharge. Greer alleges that Jarrett's derogatory comments[10] to her aggravated her disability and caused her excessive absences which, subsequently, caused her discharge. Again, we disagree with Greer's argument because the record contains no evidence from which to reasonably infer that Greer's discharge was on account of an actual or perceived disability. Rather, the evidence shows, as Greer admits, that she "was terminated for no other reason other than absenteeism." Id. The record further establishes that Tolleson and Biles had no knowledge of Greer's psychological treatment by Dr. Felts and Mr. Camp prior to the discharge decision. Instead, at time of the discharge decision on September 15, 1995, Tolleson and Biles knew that Greer had a medical release to return to work. As such, we conclude that Greer also fails to establish the third element of her prima facie case of disability discrimination because there is no evidence that her discharge was on account of an actual or perceived disability.

## III.  CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

---

[10]We note that Greer also attempts to raise a hostile work environment claim based on Jarrett's comments. We do not consider this claim because Greer did not plead a hostile environment claim in her Charge of Discrimination filed with the EEOC. See 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(e)(1) (1994), which requires, as a jurisdictional prerequisite, the filing of a Charge of Discrimination with the EEOC that states the date, place, and circumstances of the alleged unlawful employment practice); Wallin v. Minnesota Dep't of Corrections, 153 F.3d 681, 688 (8th Cir. 1998) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." (internal quotations and citation omitted).

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.