**Victor R. NAVA, Plaintiff,**

v.

**TITAN WHEEL CORPORATION OF WISCONSIN, Defendant.**

**No. C00–3099–MWB.**

United States District Court, N.D. Iowa, Central Division.

June 4, 2002.

884

Jackie D. Armstrong, Brown, Kinsey & Funkhouse, PLC, Mason City, IA, Mark D. Sherinian, Sherinian & Walker Law Firm, West Des Moines, IA, for plaintiff.

Gene R. La Suer, Davis, Brown, Koehn, Shors & Roberts, Des Moines, IA, for defendant.

## ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................885

II. FACTUAL BACKGROUND ........................................886

III. LEGAL ANALYSIS ...........................................888
 A. Standards For Summary Judgment .......................888
 1. Requirements of Rule 56 ...........................888
 2. The parties' burdens .............................888
 3. Summary judgment in employment discrimination cases ..............889
 B. Nava's Disability Discrimination Claims ...............890
 1. Perceived mental disability claim .................892
 a. Nava's prima facie case of discrimination .......................892
 b. Nava's rebuttal of Titan's reason for his termination ..............895
 2. Other disability claims ...........................896
 C. Nava's Sex Discrimination Claims ......................897

IV. CONCLUSION ................................................899

## I. INTRODUCTION

In this employment discrimination action, plaintiff Victor Nava alleges he was permanently laid off by defendant Titan Wheel Corporation of Wisconsin in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Iowa Civil Rights Act ("ICRA"), Iowa Code Ch. 216. Nava's complaint sets forth five Counts, in which Nava generally alleges his termination constituted discrimination because of his disability (Counts I and II), age (Counts III and IV) and gender (Counts IV and V).

Presently before the court is Titan's motion for summary judgment on all Counts. Titan seeks summary judgment on the grounds Nava cannot make out any prima facie case of discrimination, and has failed to rebut Titan's legitimate, non-discriminatory reasons for his termination. In resistance, Nava withdraws his age discrimination claims, but opposes Titan's motion as to his disability and sex discrimination claims. Nava contends discovery in this lawsuit revealed evidence Titan regarded Nava as having a mental disability, which

led Titan to terminate Nava by eliminating his job and refusing to consider him for other positions for which females were selected. In reply, Titan contends Nava has never alleged any mental disability before now, and his perceived mental disability claim is significantly different than what he alleged in his administrative charge. Titan maintains there is no evidence Nava had any protected disability, yet alone any evidence he was perceived by Titan has having a protected mental disability. Titan further maintains the undisputed facts show Titan terminated Nava because his job was no longer needed and thus eliminated, and because there were no open positions for which Nava was qualified.

A trial in this matter is presently scheduled for July 29, 2002. Mr. Nava is represented by Mark D. Sherinian, Esq., of Sherinian & Walker Law Firm, West Des Moines, Iowa, and Jackie D. Armstrong, Esq., from Brown, Kinsey & Funkhouser, P.L.C., Mason City, Iowa. Titan is represented by Gene R. La Suer, Esq., of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, Iowa. Oral arguments regarding Titan's summary judgment motion were heard on May 29, 2002. Mr. Sherinian appeared on Nava's behalf, and Mr. La Suer appeared on behalf of Titan.

## II. FACTUAL BACKGROUND

In 1996 Titan purchased a manufacturing facility in Ventura, Iowa. The Ventura facility was previously owned by the Nieman family, and operated under the name of Nieman's. When Titan initially bought this facility, the work there consisted of assembling brakes and actuators for trailers; assembling and distributing tire and wheel assemblies; and distributing axles and axle components.

Nava was employed at the Ventura facility when Neiman's sold it, and continued working for Titan thereafter. In 1987 Nava was originally hired as a truck driver. He performed this job until 1991 when he was reassigned to the shipping department due to a work-related back injury. Nava stayed in shipping until 1995, after which he worked in the office as a customer service representative. Nava's customer service job was a salaried position involving the sale of axles and axle parts over the phone and to walk-in customers. Less than 5% of his duties were non-customer-service responsibilities, such as answering the phones when no one else was available. Nava was apparently the only customer service representative at the facility until 1996 or 1997. At that time, another employee, Lisa Templeton, was assigned to customer service and performed the same functions as Nava. Templeton was initially hired in 1995 as an accounts clerk, and then performed office work until she transferred to customer service.

Beginning in 1997 or early 1998, the Ventura facility's management changed. At that time, Richard Fisher became the human resources manager. In February 1998 Michael Adamietz assumed the position of operations manager. Adamietz was then Nava's supervisor. Adamietz reported to Richard Kohl, the operations manager of Titan's Slinger facility.

Beginning in 1999, the Ventura facility's product mix changed. Early that year, Titan moved the facility's tire and wheel work to a Titan facility in Des Moines, Iowa. The Ventura facility's operations then consisted only of assembling brakes and actuators, and distributing axles and axle parts. The assembled brakes and actuators were shipped to another Titan facility, and not sold directly to customers. The distributed axles and axle parts were sold directly to customers, but were obtained from a supplier rather than being manufactured by Titan.

That same year, Titan then decided the Ventura facility would be strictly a brake and actuator facility, and began a process of eliminating the facility's axle line. The decision to discontinue selling axles at this facility was made because the profit on the sale of axles was insignificant when compared with the cost of the sales.

During 1999 the following events also occurred:

1) In early February, Nava suffered an emotional breakdown, threatened suicide and was hospitalized for several days. The parties agree that, at the time, Fisher and Adamietz were advised of Nava's emotional breakdown and hospitalization by Nava's wife, who also worked at the Ventura facility. However, the parties dispute how much Fisher and Adamietz actually knew about Nava's emotional condition.

2) In February, Adamietz moved Templeton to a newly-created planner position, in which she handled production planning for the facility's assembly work. Adamietz was required to create this position because the planning work was previously being done by someone at another Titan facility, rather than someone on the Ventura facility's payroll. The planner position was not posted, and Templeton was the only person considered for it. After Templeton was transferred to this position, her customer service workload was assumed by Nava.

3) In October, Titan decided to eliminate the customer service representative position held by Nava. While there is no dispute that Titan management discussed the possibility of eliminating this position before the final decision was made, the parties disagree as to when such discussions occurred.

4) On November 17th, Nava was called into Fisher's office, and was told by Fisher and Adamietz that he was being laid off because his position was being eliminated. Nava was not informed of his lay-off until it happened. Nava then went home, and was never recalled to work by Titan.

After Nava was laid off, no one was hired to replace him. No one disputes that the remaining customer service responsibilities for the sale of the limited volume of axles still in inventory were performed by Adamietz, and that these tasks were sporadic, limited in nature and took very little time. However, Nava alleges that many of his duties as a customer service representative were also performed by the receptionist at the Ventura facility, which Titan denies.

At the time of Nava's lay-off, the receptionist at the Ventura facility was a female temporary employee. This person was terminated in February 2000 because she quit coming to work. The next receptionist was another female temporary employee, who quit after six months. Thereafter, the receptionist position—which was an hourly position—remained unfilled and the receptionist duties were shared by the facility's permanent office employees.

In March 2000, Nava filed a discrimination charge against Titan with the Iowa Civil Rights Commission (ICRC), which was cross-filed with the Equal Employment Opportunity Commission (EEOC). In his charge, Nava alleged he was told he was being terminated because his job was being eliminated, and later learned his duties were assigned to a younger female employee who was not disabled. Nava indicated he believed Titan discriminated against him based on a physical disability, age and gender. The ICRC administratively closed its file on Nava's charge in July 2000. The EEOC adopted the ICRC's findings and administratively closed its file on Nava's charge in October 2000. Nava received right-to-sue letters from the ICRC and the EEOC on September 29, 2000, and October 16, 2000, respec-

tively. This lawsuit was then filed on December 11, 2000.

## III. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

#### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part:
Rule 56. Summary Judgment

. . . .

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added).

Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir. 1999).

#### 2. The parties' burdens

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the portions of the record showing a "lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998). When this burden is met, the party opposing summary judgment "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Instead, he is required to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998). If he fails to make a sufficient showing of an essential element of a claim for which he has the burden of proof, then the movant is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106

S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### 3. *Summary judgment in employment discrimination cases*

 Because this is an employment discrimination case, it is well to remember the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987). *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir. 1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995) ("[S]ummary judgments should only be used sparingly in employment discrimination cases.") (citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir. 1990); and *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only

one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant.") (citing *Crawford*, 37 F.3d at 1341); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

Nevertheless, the Eighth Circuit Court of Appeals has also observed that "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct.

2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is "1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097.

■ Accordingly, the court will apply the foregoing standards to Titan's motion for summary judgment, addressing each of Nava's claims in turn. As previously stated, the claims set forth in Nava's complaint allege discrimination based on disability, age and sex. Nava's resistance brief, however, states Nava is withdrawing his age-based claims for lack of evidence of discriminatory intent. (Pltf.'s Br., at 17). Accordingly, Nava's disability claims (Counts I and II) and gender claims (Counts IV and V) are the only claims that will be addressed in this analysis.[1]

### B. Nava's Disability Discrimination Claims

The ADA prohibits employers from discriminating against a qualified employee who is disabled because of his disability. 42 U.S.C. § 12112(a). Under the ADA, discrimination is defined to include the failure to make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified employee with a disability, unless the accommodation would impose an undue hardship. *Id.* § 12112(b)(5)(A). "Disability" is defined to mean: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(2); *accord Greer v. Emerson Elec. Co.,* 185 F.3d 917, 921 (8th Cir.1999) (A plaintiff may prove disability by showing he (1) has a disability as defined under the ADA; (2) suffers from a history of such a disability; or (3) is perceived by his employer as having such a disability) (citing 42 U.S.C. § 12102(2)(A)-(C)).

A plaintiff who brings a disability discrimination claim bears the initial burden of establishing a prima facie case of discrimination. *Kellogg v. Union Pac. R.R. Co.,* 233 F.3d 1083, 1086 (8th Cir.2000). One of the essential elements of the plaintiff's prima facie case requires a showing that he has a disability as defined by the ADA. *Id.; accord Cooper v. Olin Corp.,*

---

1. It should be noted that in considering Nava's discrimination claims, the court will generally make no distinction between claims based on federal law and comparable claims based on state law. This is appropriate because claims brought under the ICRA are analyzed in accordance with federal standards. *See Brunko v. Mercy Hospital,* 260

F.3d 939, 941 (8th Cir.2001) (citing *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 616 (8th Cir.1997) (disability discrimination)); *Board of Supervisors of Buchanan County v. Iowa Civil Rights Comm'n,* 584 N.W.2d 252, 256 (Iowa 1998) (gender discrimination); *see also Fuller v. Iowa Dep't of Human Servs.,* 576 N.W.2d 324, 329 (Iowa 1998).

*Winchester Div.*, 246 F.3d 1083, 1087 (8th Cir.2001) (to establish a prima facie case of disability discrimination, a plaintiff must show he is disabled within the meaning of the ADA) (citing *Kiel*, 169 F.3d at 1135); *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 678 (8th Cir.2001). If the plaintiff fails to establish any element of his prima facie case, summary judgment is proper. *Kellogg*, 233 F.3d at 1086 (citing *Kiel*, 169 F.3d at 1134–35). If the plaintiff proves his prima facie case, however, the defendant must then articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant does so, the burden shifts to the plaintiff to demonstrate the defendant's reason constitutes pretext for intentional discrimination. *Id.*

In this case, Nava's complaint sets forth two distinct disability discrimination claims, one for unlawful termination and one for failure-to-accommodate. Both claims are based on an unspecified disability. Attached to Nava's complaint is a copy of his administrative charge, the authenticity of which is not disputed. In Nava's charge, where Nava was asked to describe the particulars of his complaint, he simply wrote: "I have a disability. I have worked for Titan Wheel Corporation since September 23, 1987, in the positions of truck driver, shipping and customer service. On November 17, 1999, I was told I was being terminated because my position was being eliminated. I later learned that my duties were assigned to a younger female who was not disabled." Where Nava was asked to identify the bases of his disability discrimination allegations, he marked the boxes for age, sex and physical disability. (Pltf.'s Complaint, Exhibit A).

Nava's brief in resistance to Titan's summary judgment motion specifically asserts a discrimination claim based on a "regarded as" mental disability as defined under 42 U.S.C. § 12102(2)(C). In his brief, Nava alleges his lawyers learned that a "regarded as" mental disability was the "real reason" for Nava's termination during discovery in this case when Titan produced a memo written by one of Nava's co-workers, Cheryl Hawe, expressing concerns about Nava's anger.[2] Nava contends that Hawe's memo shows the extent to which Titan was concerned and focused upon his perceived emotional disability to the point that Titan eliminated his job and refused to consider him for the planner position assigned to Templeton and the receptionist position held by a temporary employee. Nava further contends he is entitled to raise a "regarded as" disability claim here because this claim is sufficiently like or related to his administrative charge to deem it exhausted. (Pltf.'s Br., at 2 and 5–14).

In seeking summary judgment, Titan contends Nava has failed to create any issue of material fact as to his disability claims. Titan maintains the record does not establish that Nava ever had any protected disability, that Nava ever told Titan he was disabled or needed an accommodation, or that Nava's termination was anything but a legitimate, non-discriminatory business decision. In particular, Titan rejects Nava's "regarded as" mental

---

2. A copy of Hawe's memo is provided in Nava's appendix in support of his resistance brief (P.App.42). This memo is addressed from Hawe to Adamietz, with a copy to Fisher. It states in its entirety: "Per our conversation on March 17, 1998, to reiterate my concern over the actions of Victor Nava due to rapid mood swings and intense angered behavior. If Mr. Nava is allowed to continue to throw and push things in this unprofessional manner, it is only a matter of time before a customer could be exposed to one of these episodes. I am extremely concerned with my physical well being when alone in the office with Mr. Nava due to our unique scheduling. I expect steps to be taken to insure my physical safety when these occurrences arise."

disability claim, arguing Nava has not shown he was perceived as having a mental disability, and has never alleged any mental disability before resisting Titan's motion. Titan contends Nava's current theory of discrimination based on a "regarded as" mental disability is "decidedly different" than what he alleged in his administrative charge. Titan claims that, when Nava filed his charge, he apparently alleged discrimination based on his back injury, which the ICRC found was not a protected disability. Titan contends that "at no time did the ICRC refer to, hint at or suggest" that Titan regarded Nava as having a mental disability. (Deft.'s Br., at 2–3).

### 1. Perceived mental disability claim

The court begins its analysis of Nava's disability discrimination claims by noting that the only disability claim disputed by the parties in their summary judgment pleadings is Nava's claim based on a "regarded as" mental disability, as provided under 42 U.S.C. § 12102(2)(C). Therefore, in analyzing Nava's disability claims, the court will first consider this particular claim.

#### a. Nava's prima facie case of discrimination

The first issue raised by the parties with respect to Nava's "regarded as" mental disability claim is whether Nava can prove he has a protected disability as a necessary element of his prima facie case of disability discrimination. Nava contends the record shows Titan perceived Nava as having a perceived mental disability, based on the temporal proximity of Nava's breakdown and Templeton's transfer, and Adamietz's refusal to consider Nava for the planner and receptionist positions. Alternatively, Titan argues the evidence does not demonstrate Titan perceived Nava as having any emotional disability that substantially limited his ability to work.

As stated, a plaintiff's prima facie case of disability discrimination includes a showing that the plaintiff is disabled within the meaning of the ADA. See Webner v. Titan Distribution, Inc., 267 F.3d 828, 833 (8th Cir.2001); Weber v. Strippit, Inc., 186 F.3d 907, 912 (8th Cir. 1999); Cooper, 246 F.3d at 1087. "[W]hether a person has a disability under the ADA is an individualized inquiry." Sutton v. United Air Lines, Inc., 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). A plaintiff is considered disabled for purposes of the ADA if he is "regarded as having" an impairment that "substantially limits" a "major life activit[y]," as provided under 42 U.S.C. § 12102(2)(C). See Toyota Motor Manufacturing v. Williams, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); Wooten, 58 F.3d at 385. This provision was further explained by the Eighth Circuit Court of Appeals as follows:

> "The limiting adjectives 'substantially' and 'major' indicate that the perceived impairment must be a significant one. A person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment. The focus is on the impairment's effect upon the attitudes of others. This provision is intended to combat the effect of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities."

Wooten, 58 F.3d at 385 (internal quotations and citations omitted); see also Runnebaum v. NationsBank of Maryland, N.A., 95 F.3d 1285, 1289 (4th Cir.1996) (The EEOC defines "regarded as having" a disability to include persons who have an impairment "that substantially limits major life activities only as a result of the attitudes of others toward such impair-

ment,' " quoting 29 C.F.R. § 1630.2(a)[(*l*)](2)) (emphasis provided by Fourth Circuit) (subsequent history omitted).

To prove a "regarded as" disability within the meaning of the ADA, the plaintiff must demonstrate the defendant entertains misperceptions about him—that the defendant believes the plaintiff has either "a substantially limiting impairment" that he does not have, or "a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton,* 527 U.S. at 488–89, 119 S.Ct. 2139; *Conant v. City of Hibbing,* 271 F.3d 782, 784–85 (8th Cir.2001). To establish a "regarded as" claim under the ADA, a plaintiff must show that the defendant "perceived him as actually disabled." *Kellogg,* 233 F.3d at 1089 (citing *Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 521–22, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) and 29 C.F.R. § 1630.2(*l*)(1)). The test for perceived disability is not "whether defendant treated plaintiff adversely because of his or her feelings about the plaintiff's physical or mental impairment. . . . Rather, the test is whether defendant treated plaintiff adversely because it regarded him as having an impairment that substantially limits one or more major life activities." *Weber,* 186 F.3d at 915 (internal citations omitted). Temporary, minor impairments are not considered substantially limiting under the ADA. *See Wheaton v. Ogden Newspapers,* 66 F.Supp.2d 1053, 1059 (N.D.Iowa 1999) (citing 29 C.F.R. § 1630.2(j) and pt. 1630, App. § 1630.2(j)).

"An employer's knowledge of an employee's disability, without more, is not sufficient to establish a 'regarded as' claim." *Kellogg,* 233 F.3d at 1089; *Conant,* 271 F.3d at 786 (The mere fact that a defendant is aware of a plaintiff's past medical condition and might perceive that the plaintiff still has the medical condition or is likely to develop a medical condition

in the future is insufficient to prove a "regarded as" claim) (citing *Kellogg,* 233 F.3d at 1089, and *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1320 (8th Cir.1996)); *compare Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 961 (8th Cir.2000) (concluding that an employer's knowledge of an employee's medical difficulties and expression of concern does not amount to treating an employee as if he had a permanent disability that substantially limits his life activities); *Ceretti v. Runyon,* 1998 WL 403199 at *2 (8th Cir. July 16, 1998) ("Awareness alone . . . does not suffice to set forth a claim that an employer regarded an individual as disabled") *with Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.,* 198 F.3d 68, 73 (2d Cir.1999) (finding that an employer could "regard as" disabled an employee who had lymphoma where the employer had knowledge of the employee's diagnosis and a previous employee had died from the same disease).

To be regarded as substantially limited in the life activity of working, a plaintiff must be regarded as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Cooper,* 246 F.3d at 1089 (citing 29 C.F.R. § 1630.2(j)(3)(i) and *Murphy,* 527 U.S. at 523, 119 S.Ct. 2133). Inability to perform one particular job does not constitute a substantial limitation on working. *Id.* A plaintiff must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities. *Id.* (citing *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 488 (8th Cir.1996)). Factors to be considered in determining whether a plaintiff is restricted from a class of jobs include his expertise, background, and job expectations. *Id.* (citing

29 C.F.R. § 1630.2(j)(3)(ii) and *Taylor,* 214 F.3d at 960–61).

Here, Nava contends there is substantial evidence to find that Titan perceived Nava as having a mental impairment that substantially limited his ability to work. According to Nava, the evidence shows that Fisher and Adamietz met with Nava in early 1998, shortly after Cheryl Hawe wrote the memo that was produced by Titan during discovery in this case. When Fisher and Adamietz met with Nava, they inquired whether he was having any problems and suggested that he get help, but did not take any action at that time. Approximately a year later, on February 9, 1999, Nava had an emotional breakdown, threatened suicide and was hospitalized for five days. Nava's wife told Fisher what happened, who then relayed this information to Adamietz. It was shortly thereafter that Templeton was transferred to the planner position, for which Nava was not considered. On November 17, 1999, when Nava was laid off, he was not offered the receptionist position at that time or anytime thereafter, even though Titan considered a position held by a temporary employee to be an open position.

In reply, Titan contends the record does not demonstrate Titan perceived Nava as having permanent limitations that either substantially interfered with his ability to perform his job, or precluded him from performing a substantial class of jobs. Titan argues the undisputed evidence shows Nava returned to work after his brief hospitalization and was able to perform his job, without accommodation, until it was eliminated some eight months later. Titan further argues the undisputed evidence shows Fisher and Adamietz had very limited knowledge about the nature and extent of Nava's emotional problems, and never considered Nava unable to perform the essential functions of his job. Titan claims Fisher and Adamietz met with Nava be-

cause of communication problems he was having with coworkers and customers, and they offered to help him in dealing with these issues, but never made any changes to his job duties or took any type of adverse action against him.

The court finds that, even given the most liberal reading in Nava's favor, the record does not establish that Titan perceived Nava as having an impairment that significantly restricted his ability to work. In fact, the record is bereft of any evidence that would indicate Titan perceived Nava as being anything more than possibly impaired temporarily due to his emotional breakdown.

The undisputed record show that, when Nava had an emotional breakdown in February 1999, he was briefly hospitalized and thereafter returned to full-time work until he was laid off in November 1999. There is no evidence Nava had any further emotional problems during this eight-month period. Furthermore, Nava has never alleged Titan took any type of negative action toward him during this eight-month period, other than not considering him for the planner and receptionist positions, nor is there any evidence otherwise. In fact, Nava has never alleged Titan took any action against him before his breakdown, other than claiming Fisher and Adamietz met with him in the previous year to discuss his "problems" and suggest he get "help." However, contrary to the inference suggested by Nava, the record only shows that Fisher and Adamietz met with Nava to discuss some legitimate communication problems he was experiencing with coworkers and clients, that Nava was the one who raised the issue of how stressed he was by his job, that Fisher and Adamietz suggested he go to Adamietz for help with customer-related problems, and that Nava indicated he thought he could handle it himself. (P.App. pp. 9 and 19).

Furthermore, the record does not establish that Adamietz and Fisher knew that much about Nava's emotional problems. In her deposition, Mrs. Nava testified that, at the time of Nava's breakdown, she only told Adamietz that Nava "wasn't feeling well" and that "we'd had to put him in the hospital." (App. p. 52). She testified that she told Fisher about Nava's breakdown, but could not recall if she told him about Nava's threatened suicide. (P.App. p. 31). In their depositions, Fisher and Adamietz indicated they were aware Nava had a breakdown and was hospitalized. Adamietz testified he heard rumors about Nava's suicide attempt, although Fisher claimed he had not heard about it until this lawsuit. Both testified to being aware Nava had some emotional problems, but having very little information about the nature and extent of his condition. Fisher testified that, after his hospitalization, Nava returned to work and Fisher felt "he was pretty much back to his normal self." (P.App. pp. 8 and 23–24).

Therefore, as indicated above, Nava has not shown Titan or its managers regarded him as having either a substantially limiting impairment he did not have, or a substantial impairment that was not so limiting. *See Conant*, 271 F.3d at 784–85. More specifically, there is no evidence that Titan or its managers perceived or treated Nava as having a *significant impairment that substantially limited his ability to work*. *See Wooten*, 58 F.3d at 385 (the limiting adjectives "substantially" and "major" in the ADA's definition of the term "disability" indicates that "the perceived impairment must be a significant one"); *Weber*, 186 F.3d at 915 (the test is whether the defendant treated the plaintiff adversely because the defendant perceives him as having an impairment that substantially limits one or more major life activities). Nor does the evidence show that managers, Fisher and Adamietz, were told or aware of very much information regarding Nava's emotional condition, and the fact that they had some information in itself is insufficient to establish a "regarded as" disabled claim. *See Kellogg,* 233 F.3d at 1089.

Based on foregoing analysis, the court finds Nava has failed to show he was regarded by Titan as having a protected mental disability and, as a consequence, has failed to create a genuine issue of fact on the first element of his prima facie case of a "regarded as" disabled claim. Therefore, the court concludes Titan is entitled to summary judgment as to Nava's perceived mental disability claim on this basis.

### b. Nava's rebuttal of Titan's reason for his termination

Alternatively, even if it were found there exists a genuine issue whether Titan perceived Nava as having a protected mental disability, the parties dispute whether the record shows Nava can satisfy his subsequent burden to prove that Titan's proffered reason for terminating him constitutes pretext for discriminatory intent. The court's analysis will now turn to this issue.

 Titan maintains that Nava was terminated because his position was eliminated since it was no longer needed, and there were no open positions available for which Nava was qualified. According to Titan, the Ventura facility's axle sales had been declining for years. As sales declined, Templeton was moved to the planner position and Nava became the only remaining customer service representative. Titan then decided to discontinue the facility's axle line because the profit on axle sales was insignificant when compared to the cost of axle sales. When this decision was made, Titan decided to eliminate the customer service position held by Nava since the facility would no longer be selling axles. Titan decided to lay off Nava be-

cause there were no other salaried jobs available, and it was Titan's policy not to bump a salaried person to another salaried position, nor were there open hourly positions, although it was Titan's policy not to move a salaried person into an hourly position when there was a lay-off.

Accordingly, the court finds Titan has met its burden to articulate a legitimate, non-discriminatory reason for Nava's termination. Thus, in order to survive summary judgment, Nava must meet his burden and generate a genuine issue of material fact on the pretextual nature of Titan's stated reason for terminating him. *Cf. Reeves,* 530 U.S. at 149, 120 S.Ct. 2097 (employing burden-shifting analysis and holding that prima facie case of discrimination and evidence of pretext may permit a finding of liability); *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817 (establishing burden-shifting analytical framework where there is no direct evidence of discrimination). In *Reeves,* the United States Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. In this case, the court does not find that Nava has presented sufficient evidence of pretext to create a genuine issue of material fact and to give rise to an inference of intentional disability discrimination.

Nava's termination was actually the result of three separate decisions by Titan: (1) the decision to discontinue the Ventura facility's axle line, (2) the decision to eliminate the customer service position held by Nava, and (3) the decision to lay off Nava and terminate his employment. Nava does not dispute Titan's stated reasons for the first decision, only the second two. In disputing Titan's asserted reasons for deciding to eliminate his job and terminate him, Nava has no evidence to support an inference of pretext or intentional discrimination based on a perceived mental disability, other than Hawe's March 1998 memo and Nava's February 1999 emotional breakdown. Nava argues that the temporal proximity between his breakdown and his non-consideration for the planner position is critical, inferring there is a causal connection between these two events. However, the critical inquiry in this matter is whether the evidence supports an inference of a causal relationship between Nava's breakdown and his termination. The undisputed evidence demonstrates that *Nava was not terminated until 1½ years following Hawe's memo and over eight months after his breakdown,* and that during this period Titan is not alleged or shown to have taken any negative action toward Nava other than not considering him for the planner and receptionist positions. The fact that Nava was not considered for these positions does support the inference alleged by Nava that Titan actually began an eight-month process of terminating his employment shortly after and because of Nava's breakdown and/or Hawe's memo. The record as a whole, even if viewed in the light most favorable to Nava, simply does not establish that Titan's reasons for its actions were pretextual or motivated by a discriminatory intent.

As discussed above, Nava has failed to create a genuine issue of fact regarding Titan's reasons for terminating him. The court therefore concludes Titan is entitled to summary judgment as to Nava's "regarded as" mental disability claim on this basis as well.

### 2. *Other disability claims*

As previously noted, Nava's complaint asserts two distinct disability dis-

crimination claims, one based on Nava's termination and the other generally alleging a failure-to-accommodate. Nava's complaint does not allege any particular disability as the basis for these claims. Attached to Nava's complaint is a copy of Nava's administrative charge, which refers to unspecified "physical disability" and "disability" as the basis for Nava's original discrimination allegations.

As discussed earlier, Nava bears the initial burden to prove a prima facie case of disability discrimination, see Cooper, 246 F.3d at 1087, and cannot avoid summary judgment if he fails to make a sufficient showing of a genuine issue of fact concerning any element, see Celotex, 477 U.S. at 323–24, 106 S.Ct. 2548. Yet, in resisting Titan's summary judgment motion, Nava does not indicate he is asserting a disability discrimination claim on any basis other than a "regarded as" mental disability. With the exception of his alleged perceived mental disability, Nava does not dispute or even address Titan's contention that he cannot prove disability discrimination because he cannot establish he had any protected disability. Nor does Nava dispute or address Titan's contention that he cannot prove discrimination because he cannot demonstrate he ever sought an accommodation of a disability from Titan. Because Nava has failed to offer any argument or other indication that he opposes summary judgment as to any disability claims based on a protected disability other than a "regarded as" mental disability, or that he opposes summary judgment as to his failure-to-accommodate claim, the court will not engage in conjecture regarding the same, particularly since the record as a whole, when viewed in the light most favorable to Nava, supports Titan's contention that Nava cannot establish such claims.

■ Therefore, based on the foregoing, the court finds that the "regarded as"

mental disability claim asserted by Nava in resisting Titan's motion is the only disability claim currently being raised in this lawsuit, and that Nava has since abandoned the claims originally made in his administrative charge based on an unidentified "physical disability" or simply a "disability," as well as the failure-to-accommodate claim contained in his judicial complaint. Cf. Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 527, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994) (issues raised by habeas corpus petitioner in original petition but not briefed are deemed abandoned) (citing Russell v. United States, 369 U.S. 749, 754, n. 7, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). Furthermore, the court notes that to the extent the failure-to-accommodate claim in Nava's complaint is based on an alleged "regarded as" mental disability, this claim is not a viable cause of action. The Eighth Circuit Court of Appeals has ruled that a perceived disability claimant is not entitled to reasonable accommodation. Strippit, 186 F.3d at 916–17. Accordingly, the court will dismiss this claim.

### C. Nava's Sex Discrimination Claims

■ The proof necessary for discrimination cases is flexible and varies with the specific facts of each case. Young v. Warner–Jenkinson Co., Inc., 152 F.3d 1018, 1022 (8th Cir.1998). However, the prima facie case to establish a gender-based employment discrimination claim generally requires that the plaintiff prove he is within the protected class, was qualified to do the job, suffered an adverse employment action, and that persons of the opposite sex were not treated the same. See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999). In addition, where the plaintiff is a male, the prima facie case involves the additional step of showing that "background circumstances" support the suspi-

cion that the defendant is "that unusual employer who discriminates against the majority." *Duffy v. Wolle,* 123 F.3d 1026, 1028 (8th Cir.1997), *cert. denied,* 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998). Once a prima facie case is set forth, the defendant must articulate a legitimate, nondiscriminatory reason for its actions, which plaintiff must then rebut with evidence of pretext or discriminatory animus. *McDonnell Douglas,* 411 U.S. at 800–06, 93 S.Ct. 1817.

The sex discrimination claims set forth in Nava's complaint generally allege unlawful termination (Counts IV and V). In opposing summary judgment on these claims, Nava contends the evidence shows Titan discriminated against Nava based on his gender by terminating him and then refusing to consider him for the receptionist position.

■ The primary issue raised by the parties concerning summary judgment as to Nava's sex discrimination claims is whether Nava can establish a prima facie case of reverse sex discrimination, which includes the extra step of presenting "background circumstances" to support the suspicion that Titan is an unusual employer who discriminates against males. *See Duffy,* 123 F.3d at 1028. Nava cites the following background circumstances as sufficient to support his prima facie case: (1) only female receptionists were hired during the 13 years Nava worked at the facility, which is generally true for most employers; (2) when the female receptionist was terminated in February 2000, Titan hired another female for the receptionist job; and (3) Nava was extremely more qualified than these two female temporary employees. Titan argues Nava cannot prove a prima facie case on the grounds Nava never applied or expressed an interest in the receptionist position, and the background circumstances he has present-ed do not support a suspicion of reverse discrimination.

Upon considering the record in the light most favorable to Nava, the court finds that Nava cannot prove a prima facie case of sex discrimination. In particular, the "background circumstances" relied on by Nava in contending he has shown a prima facie case do not support a "suspicion" that Titan engages in reverse discrimination against male employees. *See Duffy,* 123 F.3d at 1028. First, Nava's allegation that employers in general almost always hire female employees is unsupported. Second, Nava's allegations that the Ventura facility had only female receptionists from 1987 through 1999 while he worked there may be undisputed, but Titan did not take over the facility until 1996, and the managers whose actions are being challenged did not assume their positions at the facility until late 1997 through early 1998.

Finally, the only other circumstance cited by Nava is based on the undisputed evidence that the receptionist position was held by a female temporary employee at the time Nava was laid off, became available within three months or so, and was then filed by another female employee without Nava being considered or asked if he was interested in this position. Additionally, Nava's contention that he was extremely more qualified for the receptionist position than these two temporary employees is not disputed by Titan. However, there is no evidence Nava ever expressed any interest in the receptionist position, nor does Nava allege otherwise. While not determinative, this factor weighs heavily against finding Nava can prove a prima facie case, as courts generally recognize that a prima facie case cannot be established unless the plaintiff shows that he made a reasonable effort to convey his interest in the job to the employer or that the employer otherwise had a reason or

duty to consider the plaintiff for the job. *See Gentry v. Georgia–Pacific Corp.*, 250 F.3d 646, 647 (8th Cir.2001); *Kehoe v. Anheuser–Busch, Inc.*, 96 F.3d 1095, 1105, n. 13 (8th Cir.1996); *Chambers v. Wynne School District*, 909 F.2d 1214, 1217 (8th Cir.1990).

Given the analysis above, the court concludes Nava is unable to prove a prima facie case of sex discrimination. Even if a prima facie case may be established, the parties have raised the issue of whether Nava can show Titan's stated reasons for terminating Nava and not considering him for the receptionist position are a pretext for intentional discrimination based on Nava's gender. The analysis of this issue is identical to the analysis of Titan's asserted reasons for its actions performed above in connection with Nava's "regarded as" mental disability claim. Based on that analysis, the court concludes with regard to Nava's sex discrimination claim, as it did for Nava's disability claim, that Nava has failed to establish that Titan's proffered reasons for its challenged conduct are pretextual. Therefore, the court further concludes Titan is entitled to summary judgment as to Nava's sex discrimination claim.

## IV. CONCLUSION

Because the court has concluded as a matter of law that Nava cannot meet his burden to prove his claims of disability discrimination brought under the ADA and ICRA, the court **grants Titan's Motion for Summary Judgment on Counts I and II of Nava's complaint**. Because the court has concluded as a matter of law that Nava cannot prove his sex discrimination claims brought under Title VII and the IRCA, the Court grants **Titan's Motion for Summary Judgment on these claims as alleged under Counts IV and V of Nava's complaint**. Since Nava has withdrawn the age discrimination claims alleged in his complaint, therefore, **this or-**

der disposes of all matters raised in this case and judgment shall enter accordingly.

**IT IS SO ORDERED.**