**Ron MONSON, Appellant,**

v.

**IOWA CIVIL RIGHTS COMMISSION; Inga Bumbary–Langston, as Director of the Iowa Civil Rights Commission; and Martin Marietta Aggregates, Inc., Appellees.**

No. 90–72.

Supreme Court of Iowa.

March 20, 1991.

James M. Stanton of Schuler, Stanton, Grabinski & Sorensen, Clear Lake, for appellant.

Bonnie J. Campbell, Atty. Gen., and Rick Autry, Asst. Atty. Gen., for appellee Iowa Civ. Rights Com'n.

James R. Swanger and Robert D. Andeweg of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellee Martin Marietta Aggregates, Inc.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

Appellant Ron Monson's employment was terminated after he missed extended periods of work to care for his terminally ill child. Claiming his termination was a product of "vicarious disability discrimination," Monson sought relief from the Iowa Civil Rights Commission. The Commission rejected Monson's claim and he petitioned for judicial review. The district court dismissed Monson's action on jurisdictional grounds. We affirm.

The facts are undisputed. Ron Monson was employed for several years as an asphalt plant manager for appellee Martin Marietta Aggregates, Inc. Following his wife's death in 1986, Monson assumed sole

responsibility for raising his four young children. In 1988, Monson's seven-year-old daughter developed a brain tumor. Her treatment required regular trips to the Mayo Clinic for chemotherapy. As her condition worsened she needed progressively more care at home. Monson determined that he could not afford professional home health care. He elected to tend his daughter around the clock, to the exclusion of his work at the asphalt plant.

Martin Marietta gave Monson an unpaid leave of absence, with full benefits, from November 1988 to January 1989. On January 3, 1989, however, the company terminated his employment. In a subsequent claim filed with the Iowa Civil Rights Commission, Monson asserted that his "daughter's disability is his and that [he] was terminated for complete and total physical disability" contrary to the disability anti-discrimination provisions of the Iowa Civil Rights Act. *See* Iowa Code § 601A.2(11) (1989).

The Civil Rights Commission ruled that it had no jurisdiction over a discharge that was not related to the employee's own disability. Monson challenged this decision by filing a petition for judicial review with the district court. For reasons which will be more fully detailed, service of the petition in accordance with Iowa Code section 17A.19(2) was timely as to Martin Marietta, but not the Civil Rights Commission. On this ground, and on the ground that Monson stated no cause of action for disability discrimination under chapter 601A, the district court sustained appellees' motions to dismiss. It is from these rulings that Monson appeals.

■ I. *Compliance with § 17A.19(2).* Proceedings for judicial review of agency action are commenced by filing a petition in the district court, either in Polk County, or in the county of petitioner's residence. Iowa Code § 17A.19(2). In a contested case, the petition must be filed within thirty days after the agency's final decision. Iowa Code § 17A.19(3). Pertinent to this appeal is the further rule that

> [w]ithin ten days after the filing of a petition for judicial review the petitioner

shall serve by the means provided in the Iowa rules of civil procedure for the personal service of an original notice, or shall mail copies of the petition to all parties named in the petition.... Such personal service or mailing shall be jurisdictional.

Iowa Code § 17A.19(2). By its terms, the statutory service or mailing option is jurisdictional, but we have repeatedly held that "substantial—not literal—compliance with section 17A.19(2) is all that is necessary to invoke the jurisdiction of the district court." *Brown v. John Deere Waterloo Tractor Works*, 423 N.W.2d 193, 194 (Iowa 1988).

The record reveals that Monson timely filed his petition with the district court and then promptly directed the sheriff to personally serve Martin Marietta and Inga Bumbary–Langston, director of the Iowa Civil Rights Commission. Martin Marietta was served without delay. For unexplained reasons, however, the Polk County sheriff sought to serve the director of the Civil Rights Commission in Ankeny, rather than Des Moines, and its inability to complete service was not relayed to Monson's counsel until two days beyond the statutory ten-day deadline. Upon discovery of this blunder, counsel redirected the sheriff's efforts and service was completed within days.

The Commission argues that Monson's failure to serve it within ten days from filing of the petition defeats the district court's jurisdiction. We cannot agree. Service, though tardy, was completed in substantial compliance with the statute. The sheriff's mistake cannot fairly be attributed to Monson, and the Commission has established no prejudice flowing from the brief delay. The district court was wise to rest its holding, not solely on this technical error, but on the merits of the motion to dismiss, to which we now turn.

■ II. *Dismissal for Failure to State an Actionable Claim.* It is an unfair employment practice for an employer in this state to discharge or otherwise discriminate against an employee because of a disability. Iowa Code § 601A.6(1)(a). Entitle-

ment to the benefit of this statutory protection, however, requires membership in the protected class. *Brown v. Hy–Vee Food Stores, Inc.,* 407 N.W.2d 598, 599 (Iowa 1987). Monson claims disabled status by virtue of the extraordinary time he must devote to his child. The question is whether the district court was correct in ruling that, under no set of facts provable by Monson, could the court grant statutory relief based on this allegation.

When ruling on a motion to dismiss we are obliged—like the district court before us—to view the allegations in the light most favorable to the pleader. *Hollinrake v. Iowa Law Enforcement Academy,* 452 N.W.2d 598, 600 (Iowa 1990). We accept as true the fact that Monson's child has been totally disabled. We also accept the fact that Martin Marietta terminated Monson due to the amount of time he felt compelled to devote to his daughter's care. Monson's ultimate allegation—that *he* has been disabled by his daughter's illness—is a legal conclusion, not a well-pleaded fact. *See Bailey v. Iowa Beef Processors, Inc.,* 213 N.W.2d 642, 647–48 (Iowa 1973) (motion to dismiss admits only well-pleaded facts, not conclusions regarding legal status). To overcome dismissal, Monson must plead operative facts bringing him within the statute's reach. *Id.* at 648.

As pertains to this case, chapter 601A defines disability as "the physical or mental condition of a person which constitutes a substantial handicap." Iowa Code § 601A.2(11). To qualify as a "substantial handicap," an employee's impairment must be one that "substantially limits one or more major life activities." 161 Iowa Admin.Code 8.26(1) (1988). By its terms, the anti-discrimination provisions of the statute apply only to the "disability of such ... employee." Iowa Code § 601A.6(1)(a). Taken together, we have consistently interpreted these statutes and rules as a means of protecting individual employees who are, or have been, truly disabled. *Hollinrake,* 452 N.W.2d at 604; *Fogel v. Trustees of Iowa College,* 446 N.W.2d 451, 454 (Iowa 1989); *Probasco v. Iowa Civil Rights Comm'n,* 420 N.W.2d 432, 436 (Iowa 1988).

Monson argues, in essence, that the gravity of his daughter's illness has effectively debilitated him. As between parent and terminally ill child, he asserts the impact of the disability on the child and parent are indistinguishable. We are moved by the forcefulness of Monson's argument, but not persuaded that it entitles him to the relief he seeks. His is a predicament with which any parent can sympathize. But we discern no legislative intent, express or implied, that would extend the benefits of chapter 601A to employees with disabled family members. The extension of the law which Monson suggests must come from the legislature, not this court.

Monson argues alternatively that he is the victim of "associative discrimination," an unfair employment practice recognized in a number of jurisdictions where employees have been terminated for marrying or otherwise associating with members of minority groups. *See, e.g., Reiter v. Center Consolidated School Dist.,* 618 F.Supp. 1458, 1460 (D.Colo.1985) (white female discharged for associating with Hispanic community stated sufficient Title VII claim); *Gresham v. Waffle House, Inc.,* 586 F.Supp. 1442, 1446 (N.D.Ga.1984) (white female discharged for marrying black male stated sufficient Title VII claim); *Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 892 (11th Cir. 1986) (same). *See generally* 3 A. Larson, *Employment Discrimination* § 69.10, at 13–15 (1990). The theory has no application to the case before us. Monson was not terminated because of his association with a disabled person. He was terminated because of extended absence from work.

In summary, the district court correctly ruled that Monson stated no claim upon which the Civil Rights Commission could grant relief. We affirm the dismissal of his petition for judicial review.

AFFIRMED.