# IN THE SUPREME COURT OF IOWA

No. 19–0608

Filed May 1, 2020

**CHRISTY B. LOGAN,**

Appellant,

vs.

**THE BON TON STORES, INC.** and **LIBERTY MUTUAL INSURANCE CORP.,**

Appellees.

Appeal from the Iowa District Court for Johnson County, Lars Anderson, Judge.

A claimant appeals the dismissal of her petition for judicial review of a workers' compensation commission decision. **REVERSED AND REMANDED.**

Christy B. Logan, Iowa City, pro se.

Andrew D. Hall and Aaron W. Lindebak of Grefe & Sidney, P.L.C., Des Moines, for appellees.

**MANSFIELD, Justice.**

Before us is a codicil to a case we decided last year. In *Ortiz v. Loyd Roling Construction,* 928 N.W.2d 651, 655 (Iowa 2019), we held that emailing a petition for judicial review to the opposing party's counsel by the statutory deadline, where the petition was actually received and no prejudice resulted, substantially complied with Iowa Code section 17A.19(2) (2017). Today we have to decide whether the same rule applies to faxing. In our view, the similarities in the two situations outweigh any differences. Therefore, we hold that timely faxing a petition for judicial review to the opposing party's counsel, where the petition is actually received and no prejudice results, constitutes substantial compliance under section 17A.19(2). Accordingly, we reverse the judgment of the district court dismissing the petition for judicial review, and we remand for further proceedings.

## I. Facts and Procedural History.

Christy Logan worked as a retail salesperson for the Younkers department store in Coralville from 2008 to 2018. Her medical records indicate she suffered from significant left knee and bilateral knee pain during 2014.

On February 22, 2016, Logan filed a petition with the Iowa Workers' Compensation Commission against her employer and its workers' compensation insurance carrier.[1] Logan alleged she suffered a work injury when she tripped on a rug at work on March 1, 2014. Approximately two months later, on April 4, 2016, Logan filed three other petitions with the commission. Each petition alleged further workplace injuries occurred

---

[1]We will refer to the respondents collectively as Younkers, which is the d/b/a for Logan's employer, The Bon Ton Stores, Inc.

when Logan tripped on a rug at work on April 4, April 23, and October 18, 2014, respectively.

Following a hearing, the deputy commissioner issued an arbitration decision on August 24, 2018. He found that Logan had not proved that a compensable workplace injury occurred on March 1, April 4, or April 23, 2014. The deputy noted that Logan already had a longstanding knee condition, and none of the medical records from the spring of 2014 referred to even a possible workplace injury. The deputy did find that Logan had sustained a compensable workplace injury on October 18. However, as the deputy reviewed the record, there was no evidence that Logan had lost time from work due to that injury. Also, as the deputy pointed out, Logan's attending physician saw her on October 30 (twelve days later) and determined that any symptoms from the October 18 injury had been resolved. Accordingly, the deputy concluded that Logan should take nothing on her petitions alleging March 1, April 4, and April 23 workplace injuries. With respect to the October 18 injury, Logan was awarded only the costs of her October 30 medical consultation.

Logan filed an interagency appeal to the commissioner, who affirmed the deputy's decision in an appeal decision on December 5, 2018. Logan then filed a pro se petition with the Iowa District Court for Johnson County seeking judicial review of the commissioner's ruling. The petition was electronically filed on January 3, 2019. Logan faxed copies the same day to Younkers' attorney and the workers' compensation commission. Younkers' attorney does not dispute that he received the petition.

On January 23, Younkers moved to dismiss Logan's petition for judicial review. Younkers argued that Iowa Code section 17A.19(2) (2019) requires the petitioner either to "mail" the petition or "serve [it] by the means provided in the Iowa rules of civil procedure for the personal service

of an original notice." Iowa Code § 17A.19(2). Because Logan had not mailed the petition in the conventional sense or caused it to be served personally, and because the ten days allowed for service had expired, Younkers asked for dismissal of the petition. Logan resisted the motion, attached proof of her faxes to her resistance, and also served Younkers' attorney with the petition again, this time by certified mail.

On March 13, the district court entered an order granting Younkers' motion to dismiss. It observed that the ten-day service requirement was jurisdictional. *See id.* But it also noted that "substantial compliance with § 17A.19 provides the district court with jurisdiction over the case." *See Brown v. John Deere Waterloo Tractor Works*, 423 N.W.2d 193, 194 (Iowa 1988). Still, the court found "that Petitioner's sending of a facsimile of her Petition to Respondents is not substantial compliance with the requirements of § 17A.19. The service requirements of § 17A.19(2) are clear, and do not authorize service by facsimile."

Logan appealed, arguing that service by fax was sufficient, and we retained her appeal.

## II. Standard of Review.

"Our review in this case is to correct errors at law." *Ortiz*, 928 N.W.2d at 653.

## III. Analysis.

Iowa Code section 17A.19(2) states in part,

> Within ten days after the filing of a petition for judicial review the petitioner shall serve by the means provided in the Iowa rules of civil procedure for the personal service of an original notice, or shall mail copies of the petition to all parties named in the petition and, if the petition involves review of agency action in a contested case, all parties of record in that case before the agency. Such personal service or mailing shall be jurisdictional. The delivery by personal service or mailing referred to in this subsection may be made upon the party's attorney of record in the proceeding before the agency.

On a quick read of the statute, the outcome of this case seems straightforward. Logan served Younkers' attorney of record on the same day she filed her petition for judicial review in the Johnson County district court. However, she served it by fax, which would not normally be considered personal service or mailing. And the statute provides that "personal service or mailing shall be jurisdictional." *Id.*

But we are not writing on a blank slate. In fact, we wrote on the same slate just a year ago. In *Ortiz*, we held that timely service by email on the respondents' attorney of record was sufficient to meet the requirements of Iowa Code section 17A.19(2). 928 N.W.2d at 655.

In *Ortiz*, like the present case, an employee was seeking judicial review of a workers' compensation commission decision. *Id.* at 652. But there, unlike here, the claimant was represented by an attorney. *Id.* Nevertheless, the attorney neglected to strictly comply with section 17A.19(2), emailing the petition instead of personally serving it or sending it by "snail mail." *Id.* The district court dismissed the employee's petition, and the court of appeals affirmed. *Id.*

In reversing that dismissal, we first observed that the statute in question had been enacted in 1975 and amended in 1981, but had not been amended since then. *Id.* at 653. We noted the following:

> At the time the statute was enacted, and when it was subsequently amended, electronic mailing was little more than a thought of a few, and the concept had little application or appreciation in society. It was in its infancy. The statute was enacted before what is now known as email was commonly used to send written communications.

*Id.* (citation omitted). We then went on:

> [T]oday, email is one of the primary and accepted forms of sending communications in society. It has largely displaced mail by the postal service in most instances, including the legal system in Iowa. Email is not only the expected form of

> communication today but generally the required or preferred form. *See* Iowa R. Civ. P. 1.442(2) (permitting service by mail or email); *see also* Iowa R. Elec. P. 16.315(1)(*a*) ("Completing the registration process . . . constitutes a request for, and consent to, electronic service of court-generated documents and documents other parties file electronically."); *id.* r. 16.315(1)(*b*) (governing electronic service of documents through electronic mail).

*Id.*

We also pointed out that our precedent applied a "substantial compliance" standard, not a strict compliance standard, to Iowa Code section 17A.19(2). *Id.* at 654 (collecting cases). Most notably, in *Brown v. John Deere Waterloo Tractor Works*, we had held that a claimant substantially complied with section 17A.19(2) when she mailed a copy of the petition for judicial review to the attorney two days *before* filing it, rather than "[w]ithin ten days after" filing it. 423 N.W.2d at 194, 196. *Brown* explained, "[W]e have consistently held that substantial—not literal—compliance with section 17A.19(2) is all that is necessary to invoke the jurisdiction of the district court." *Id.* at 194. *Brown* emphasized the lack of prejudice to the employer and highlighted that the premature service nonetheless fulfilled the legislature's purpose in enacting section 17A.19(2). *Id.* at 194–96.

Likewise, in *Monson v. Iowa Civil Rights Commission*, 467 N.W.2d 230, 232 (Iowa 1991), we held that service several days beyond the ten-day deadline substantially complied with the statute when the late service was the fault of the sheriff, not the petitioner or his counsel. We explained,

> Service, though tardy, was completed in substantial compliance with the statute. The sheriff's mistake cannot fairly be attributed to Monson, and the Commission has established no prejudice flowing from the brief delay.

*Id.* We added,

> By its terms, the statutory service or mailing option is jurisdictional, but we have repeatedly held that "substantial—

not literal—compliance with section 17A.19(2) is all that is necessary to invoke the jurisdiction of the district court."

*Id.* (quoting *Brown*, 423 N.W.2d at 194).

In fact, our substantial compliance standard under Iowa Code section 17A.19(2) is almost as old as the Iowa Administrative Procedure Act itself, dating back to 1980. *See Frost v. S. S. Kresge Co.*, 299 N.W.2d 646, 648 (Iowa 1980) (en banc) ("Section 17A.19(2) says such mailing is jurisdictional; but that subsection should not be construed to make all errors or omissions in service jurisdictional."). The legislature has amended section 17A.19 and has never disturbed that standard. *See, e.g.*, 1998 Iowa Acts ch. 1202, §§ 22–24 (codified at Iowa Code § 17A.19(1), (5), (8) (1999)); *see also Mitchell v. Cedar Rapids*, 926 N.W.2d 222, 234 (Iowa 2019) (discussing the doctrine of legislative acquiescence).

One justification, perhaps, for recognizing substantial compliance under Iowa Code section 17A.19(2) lies in the difference between a petition for judicial review and an ordinary lawsuit. When a party seeks judicial review of an agency decision in a contested case under section 17A.19(2), the parties have already been litigating. They have been communicating with each other. The petition for judicial review is just a continuation of the litigation and the communication. This contrasts with a typical civil lawsuit that may come as a bolt out of the blue to a defendant. *See Richards v. Iowa Dep't of Revenue*, 362 N.W.2d 486, 488–89 (Iowa 1985) ("Ordinarily the parties served with a copy of the petition for judicial review have already been engaged in adversary proceedings within the agency and know what the case is all about.").

In *Ortiz*, we qualified our endorsement of substantial compliance somewhat. We "acknowledge[d] that the leeway permitted under the substantial-compliance doctrine would not normally include using a

means of communication different than provided under the statute." 928 N.W.2d at 654. Yet we added that "we have in the past construed statutes written in an era that fit the means of communication at the time but were later displaced by different forms of communication." *Id.* at 655. The use of the term "mail," we held, "should not preclude the word to apply to a means of communication that would later displace postal mail as the standard and most reliable means of routine, reliable communication." *Id.*

We had not yet decided *Ortiz* when the district court ruled in the present case. Nonetheless, unsurprisingly, the parties' briefing in this court has focused on *Ortiz*. Some aspects of *Ortiz* clearly support Logan's position on appeal; others less so.

We begin with the aspects of the opinion that favor Logan. Fax, like email, would not have been on the legislature's mind when it last amended Iowa Code section 17A.19(2) in 1981. *See id.* at 653. It did not flourish until the late 1980s and the 1990s. Richard G. Barrows, *Fax Law—A Compendium of Reported Cases*, 17 L. Prac. Mgmt., 28, 29 (1991) ("Although invented in 1842, the fax (facsimile) machine did not reach universal use in the legal community until the late 1980s. Today almost every law firm in the U.S. has a fax machine."). Also, Iowa Rule of Civil Procedure 1.442(2), which we cited in *Ortiz* for permitting service by email, also permits service by fax. *Ortiz*, 928 N.W.2d at 653; *see also* Iowa R. Civ. P. 1.442(2). Moreover, if "substantial compliance" means no one has been prejudiced and the objectives of the statute have been met, then we have substantial compliance here. *See Brown*, 423 N.W.2d at 194–96.

On the other hand, *Ortiz* said in dicta (which we have already quoted) that "the leeway permitted under the substantial-compliance doctrine would not normally include using a means of communication different

than provided under the statute." *Ortiz,* 918 N.W.2d at 654.[2] Also, *Ortiz* relied in part on the fact that email has largely supplanted snail mail. *Id.* at 653–54. And to a degree, *Ortiz* was driven by a textual approach that interpreted "mail" as including "current routine systematic methods of sending written communications." *Id.* at 655.

These facets of *Ortiz* arguably would not justify treating fax under Iowa Code section 17A.19(2) the same as email. Unlike email, fax is not a *current* routine systematic method of sending written communications. And while the term "mail" can perhaps be stretched linguistically to include "email," "fax" seems to be a stretch too far.

On balance, though, we conclude that Logan substantially complied with the service requirements in Iowa Code section 17A.19(2) and, therefore, her petition should not have been dismissed. There is no dispute that Younkers timely received the petition, and Younkers does not claim prejudice. The fax number that Logan used is the same fax number that Younkers' counsel displays on the front page of his brief in this court. In *Ortiz,* we commented that "between attorneys, the notice objective of the statute is met by the use of email as much, if not more, as by postal service mail." 928 N.W.2d at 654. One could argue that fax notice is even more effective because of its rarity these days: an attorney might miss an email among the electronic clutter on his or her computer but is less likely to miss a unicorn fax. Also, faxes, after they arrive these days, are often routed to the attorney's email (although identified as faxes).

The golden age of faxing has come and gone, but we strain to see why a fax copy of a petition for judicial review that was actually received and read by an attorney should be treated differently from an emailed copy

---

[2]We cited no authority for this statement in *Ortiz.*

that was received and read. Both are recognized forms of service on an attorney under rule 1.442(2). If a law firm no longer wishes to receive faxes, the law firm can disconnect its fax machine and cease providing that number. *See* Iowa R. Civ. P. 1.411(1) ("Each appearance, notice, motion, or pleading shall be captioned with the title of the case, naming the court, parties, and instrument, and shall bear the signature, personal identification number, address, telephone number, and, *if available*, facsimile transmission number and e-mail address of the party or attorney filing it." (Emphasis added.)).

**IV. Conclusion.**

For the foregoing reasons, we hold that Logan substantially complied with the service requirements in Iowa Code section 17A.19(2). We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

Christensen, C.J., and Appel and Waterman, JJ., join this opinion. McDonald, J., files a dissenting opinion in which Oxley, J., joins. McDermott, J., takes no part.

**McDONALD, Justice (dissenting).**

I respectfully dissent. Iowa Code section 17A.19(2) (2019) provides that a party seeking judicial review of an agency action must, within ten days after filing a petition for judicial review, serve all the parties of record by mail service or by personal service in compliance with the Iowa Rules of Civil Procedure for service of original notice. Proof of service shall be established by affidavit. *See* Iowa Code § 17A.19(2) ("Proof of mailing shall be by affidavit."); Iowa R. Civ. P. 1.308(1) (stating "Iowa officers may make unsworn returns" of service and all others "shall be proved by the affidavit of the person making the service"). Service in compliance with the statute is "the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of such agency action." Iowa Code § 17A.19. The service requirements are mandatory and jurisdictional. *See id.* § 17A.19(2) ("Such personal service or mailing shall be jurisdictional."); *Cunningham v. Iowa Dep't of Job Serv.*, 319 N.W.2d 202, 204 (Iowa 1982) (stating the service requirements are "mandatory and jurisdictional"). "Thus, a failure to comply with them deprives the district court of appellate jurisdiction over the case." *Brown v. John Deere Waterloo Tractor Works*, 423 N.W.2d 193, 194 (Iowa 1988).

In concluding service by facsimile transmission substantially complies with the mandatory and jurisdictional service requirements the majority relies on *Ortiz v. Loyd Roling Construction,* 928 N.W.2d 651 (Iowa 2019). In that case, we specifically stated the "substantial-compliance doctrine would not normally include using a means of communication different than provided under the statute." *Id.* at 654. *Ortiz* made a single exception for service by email, however, for two reasons. First, *Ortiz* explained email had replaced postal mail as the normal means of

communication between lawyers. *See id.* ("Email . . . is used far more often among attorneys than postal mail and has replaced postal mail as the normal means to transmit legal documents among lawyers in Iowa."). It was the technological "displacement [that drew] email into the circle of substantial compliance." *Id.* Second, *Ortiz* noted this court had already created court rules governing email service in conjunction with the creation of Iowa's electronic document management system (EDMS). *See id.* at 653. The *Ortiz* court held that service by email substantially complied with Code section 17A.19(2) only "when done pursuant to Iowa Court Rules governing electronic service." *Id.* at 655.

Not only is *Ortiz* distinguishable from this case, *Ortiz* specifically precludes the result the majority opinion reaches today. As noted, *Ortiz* specifically stated the "substantial-compliance doctrine would not normally include using a means of communication different than provided under the statute." *Id.* at 654. *Ortiz* created a narrow exception for email service in compliance with the Iowa Court Rules governing electronic service. *See id.* at 655. Unlike email, however, facsimile transmission has not replaced postal mail as the normal means of communication between lawyers. Outside the narrow context of email service pursuant to the Iowa Court Rules governing EDMS, *Ortiz* concluded "[a]ny other method of communication would be unexpected and jeopardize the purpose of the statute." *Ortiz*, 928 N.W.2d at 655. It is unclear how the majority can conclude service of notice by facsimile transmission substantially complies with the statute when *Ortiz* specifically stated any other method of service outside of email service pursuant to the Iowa Court Rules governing electronic service "would be unexpected and jeopardize the purpose of the statute." *Id.*

Ignoring the holding and rationale of *Ortiz*, the majority muses service by facsimile transmission might substantially comply with the statute because the statute is old and the legislature might now consider service by facsimile transmission as acceptable. This argument is unpersuasive. We interpret and apply statutes using "the legislature's chosen statutory language, 'not what it should or might have said.'" *State v. Ross*, ___ N.W.2d ___, ___ (Iowa 2020) (quoting *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004)). It is the legislature's job to amend statutes in light of technological change, and a "change in the statute can only come from the legislature." *Ortiz*, 928 N.W.2d at 653. We cannot exercise legislative power and amend the Iowa Code "in the guise of interpretation" or construction. *See In re Det. of Geltz*, 840 N.W.2d 273, 280 (Iowa 2013).

The majority's exercise of the legislative power is particularly inappropriate here. The legislature has enacted, revised, and amended numerous statutes to provide for the use of facsimile transmission. *See, e.g.*, Iowa Code § 8A.344(4)(*a*) (allowing public bids to be submitted "in writing, by telephone, by facsimile, or in a format prescribed by the director as indicated in the bid specifications"); *id.* § 16.92(3)(*c*) (allowing for service of notice of release of mortgage by numerous methods, including "facsimile transmission"); *id.* § 26.14(3)(*b*) (allowing public bidding quotations to be "received by mail, facsimile, or electronic mail"); *id.* § 68A.402(1) (allowing reports from political committees to be filed by "mail bearing a United States postal service postmark, hand-delivery, facsimile transmission, electronic mail attachment, or electronic filing as prescribed by rule"); *id.* § 103.25(1) (allowing a request for inspection to be submitted by "mail or by a fax transmission"); *id.* § 235F.6(10) (allowing clerk to notify sheriff of elder abuse order "by facsimile or other electronic transmission");

*id.* § 236.5(7) (allowing clerk to notify sheriff of protective order "by sending the notice by facsimile or other electronic transmission"); *id.* § 252G.3(3) (allowing employers to report employee information by mail or fax); *id.* § 275.53(2) (allowing notice of commission's dissolution proposal of school district to be transmitted by mail, hand delivery, facsimile transmission, or electronic delivery); *id.* § 275.54(2) (allowing notice of board's dissolution proposal of school district to be transmitted by mail, hand delivery, facsimile transmission, or electronic delivery); *id.* § 321E.2(5) (allowing requests for permits to be made "in person, through the internet, by facsimile machine, or by telephone"); *id.* § 514G.110(6)(*b*)(1) (requiring notice of designation of person to conduct independent review of benefit determinations to "be sent to the commissioner via facsimile"); *id.* § 572.34(7) (allowing notice of mechanic's liens to be sent to lien registry by "United States mail or facsimile transmission" among other alternate methods). These Code provisions demonstrate the legislature is aware of facsimile transmission and knows how to amend statutes to provide for the service of notice and the transaction of business by facsimile transmission. The fact that the legislature has not amended Iowa Code section 17A.19(2) should be respected and not disturbed.

In addition to being contrary to the text of the statute and contrary to *Ortiz*, the majority opinion is also contrary to the great weight of persuasive authority. Other courts have concluded service by facsimile is not a substitute method for service where, as here, a statute or rule specifically provides for other methods of service not including facsimile service. *See, e.g., United States v. Flowers*, 464 F.3d 1127, 1131 (10th Cir. 2006) ("The Federal Rules . . . allow service by fax only when the party being served by fax has consented to it in writing."); *Firefighter's Inst. for*

*Racial Equal. v. St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (transmitting subpoena by fax is insufficient to satisfy Federal Rule of Civil Procedure 45(b)(1)); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1429 (9th Cir. 1996) (holding an offer of judgment must comply with service of process, which is not satisfied by service by fax); *Cherry v. Spence*, 249 F.R.D. 226, 229 (E.D.N.C. 2008) ("A federal plaintiff may serve process on an individual by handing a summons and complaint to the individual personally, by leaving a summons and complaint at the individual's house or other place of abode, by serving the individual's authorized agent, or by serving the individual in compliance with the law of the state where the federal court is located.  Service by facsimile does not fit into any of the first three categories . . . ." (citation omitted)); *United States v. Galiczynski*, 44 F. Supp. 2d 707, 713 (E.D. Pa. 1999) ("The result reached here, that the Federal Rules of Civil Procedure do not authorize service by fax, is consistent with the unanimous decisions rendered by courts that have considered the issue."), *aff'd*, 203 F.3d 818 (3d Cir. 1999); *Switzer v. Sullivan*, No. 95 C 3793, 1996 WL 52911, at *1 (N.D. Ill. Feb. 5, 1996) ("[S]ervice by fax raises difficult issues of timing and verification. Accordingly, service by fax does not satisfy Rule 5(b)."); *Salley v. Bd. of Governors*, 136 F.R.D. 417, 420–21 (M.D.N.C. 1991) ("[T]he Court determines that fax transmissions do not constitute either service by delivery or service by mail as those terms are used in Rule 5(b)."); *Wagner v. South Pasadena*, 93 Cal. Rptr. 2d 91, 96 (Ct. App. 2000) (holding the service of the "initial pleading by facsimile was not substantial compliance"); *Phillips, Inc. v. Historic Props. of Am.*, LLC, 581 S.E.2d 389, 390 (Ga. Ct. App. 2003) (finding service via facsimile does not substantially comply with the statute because the "inherent unreliability of service via facsimile does not serve the purpose of ensuring that the owner timely

receives notice of a lien"); *Cox v. Mid-Minn. Mut. Ins.*, 909 N.W.2d 540, 546 (Minn. 2018) (holding personal service requirement excludes facsimile transmission); *Marshall v. State*, M-40414, 544 N.Y.S.2d 437, 438 (Ct. Cl. 1989) ("Service of a claim by fax is not an authorized method of service and service by means other than prescribed by the statute is insufficient for the purpose of obtaining personal jurisdiction over defendant." (citation omitted)); *Inman v. Netteland*, 974 P.2d 365, 369 (Wash. Ct. App. 1999) (holding facsimile "does not constitute service on an attorney or party" where the rules provide for other methods of service).

In accord with the fair and ordinary meaning of the statute, I would hold Iowa Code section 17A.19(2) requires a party seeking judicial review of an agency action to serve all the parties of record by personal service or mail service as a prerequisite to invoking the district court's appellate jurisdiction. In accord with *Ortiz*, I would hold service of notice by facsimile transmission does not substantially comply with the statutory mandate because service by facsimile transmission is an "unexpected" form of communication not subject to the Iowa Court Rules and thus "jeopardize[s] the purpose of the statute." *Ortiz*, 928 N.W.2d at 655. For these reasons, I respectfully dissent.

Oxley, J., joins this dissent.